**SHEARSON LEHMAN HUTTON, INC. f/k/a E.F. Hutton & Co., Inc., Relator,**

**v.**

**Honorable James A. McKAY, Jr., Judge, 150th District Court Sitting by Designation in the 57th District Court of Bexar County; Honorable John Yates, Judge of the 57th District Court of Bexar County; and Ricardo Haua, Respondents.**

**No. 04–88–00515–CV.**

Court of Appeals of Texas, San Antonio.

Jan. 11, 1989.

Will S. Montgomery, William D. Sims, Jr., Dallas, for relator.

David P. Strolle, Jr., Martin, Strolle & Oyervides, San Antonio, for respondents.

Before CADENA, C.J., and ESQUIVEL * and REEVES, JJ.

## ON RELATOR'S PETITION FOR WRIT OF MANDAMUS

REEVES, Justice.

This is an original mandamus proceeding in which relator, Shearson Lehman Hutton, Inc., f/k/a E.F. Hutton & Co., Inc., asks this court to order respondent,[1] the Honorable James A. McKay, Jr., Judge of the 150th Judicial District Court in Bexar County, to compel arbitration of plaintiff's causes of action pursuant to a contract.

Ricardo Haua, plaintiff below, was hired by relator, a stock brokerage firm, as an Account Executive Trainee. Haua signed an Account Executive Trainee Agreement with relator and moved to San Antonio from Mexico to begin taking relator's training program to become a licensed stockbroker. The agreement contained a clause requiring all disputes arising out of his employment or termination of his employment with relator to go before an arbitrator.

Haua attended relator's training sessions for four months before his relationship with relator terminated.[2] He returned to Mexico and filed suit in a Bexar County, Texas, district court against relator for breach of contract and fraud. Relator filed a plea in abatement and motion to compel arbitration pursuant to the United States Arbitration Act (9 U.S.C. §§ 1–3 [1970]).[3]

After a hearing, Judge McKay entered an order overruling relator's plea in abatement and motion to compel arbitration. Relator filed its motion for leave to file its petition for writ of mandamus with this court.

Relator asserts that arbitration under the United States Arbitration Act, 9 U.S.C. §§ 1–3 (1970), is mandatory and clothes the trial court with absolutely no discretion. The United States Supreme Court has stated that:

By its terms, the [Arbitration] Act leaves no place for the exercise of discretion by a trial court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed. §§ 3, 4. Thus, insofar as the language of the Act guides our disposition of this case, we would conclude that agreements to arbitrate must be enforced, absent a ground for revocation of the contractual agreement.

*Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 218, 105 S.Ct. 1238, 1241, 84 L.Ed. 2d 158 (1985).

▮ The trial court, upon motion to stay the proceeding pending arbitration, must determine whether the parties agreed to arbitrate; the scope of that agreement; and when applicable, whether Congress intended certain claims based on federal statutes to be non-arbitrable. *Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 844 (2d

---

* Associate Justice Rudy Esquivel, not participating.

1. Relator names as respondents Judge McKay, who was sitting by designation for Judge Yates; the Honorable John Yates, Judge of the 57th Judicial District Court in Bexar County; and Ricardo Haua, the plaintiff and real party in interest. This court has jurisdiction to issue a writ of mandamus against a judge of a district or county court and to enforce our jurisdiction. TEX.GOVT.CODE ANN. § 22.221(a), (b) (Vernon 1988). Judge Yates did not enter the order complained of, thus no writ shall issue against him. Pursuant to § 22.221, this court has no authority to issue a writ against Mr. Haua, he neither being a judge, elected officer acting in his official capacity, or one capable of destroy-

ing this court's jurisdiction. Thus, no writ shall issue against him.

2. Relator claims Haua's employment was terminated because Haua was unable to obtain permission from the United States Immigration and Naturalization Service to work and reside in the United States.

3. The parties do not dispute the applicability of the Arbitration Act, 9 U.S.C. §§ 1–3 (1970), to this dispute. Sections 1 and 2 of the Act provide that a written arbitration agreement in a contract evidencing a transaction involving interstate commerce shall generally be valid, irrevocable, and enforceable. 9 U.S.C. §§ 1, 2 (1970).

Cir.1987); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. McCollum*, 666 S.W.2d 604, 608 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.), *cert. denied*, 469 U.S. 1127, 105 S.Ct. 811, 83 L.Ed.2d 804 *reh. denied*, 470 U.S. 1024, 105 S.Ct. 1384, 84 L.Ed.2d 403 (1985). The issue of whether the parties agreed to arbitrate is a *factual* question. *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d at 845. Once the trial court determines that the parties agreed to arbitrate and further determines that the issue raised is one falling under that arbitration agreement, it then *must* compel arbitration.

Haua signed an employment contract with relator. Relator, however, did not sign the contract. The contract specifically provides for arbitration in paragraph 5:

I agree that any controversy between myself and Hutton arising out of my employment, or the termination of my employment, with Hutton for any reason whatsoever shall be settled by arbitration at the request of either party in accordance with the Constitution and Rules of the New York Stock Exchange then in effect and that judgment on any such award may be confirmed by any court of competent jurisdiction.

The contract further provides that New York law shall govern the interpretation, validity, performance, and enforcement of the agreement.

 The issue of whether a party is bound by an arbitration clause is determined by federal law, which follows general principles of contract law. *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d at 845; *Blanks v. Midstate Constructors, Inc.*, 610 S.W.2d 220, 223 (Tex.Civ.App.—Austin 1980, writ ref'd n.r.e.). Under general contract rules, a party is bound by the terms of the contract that he has signed, except upon a showing of special circumstances which would relieve him of his obligation. *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d at 845. Furthermore, the federal Arbitration Act requires an arbitration agreement to be in writing. 9 U.S.C. § 2 (1970).

The federal courts have interpreted this to require only that the agreement to submit a future controversy to arbitration be evidenced by a writing. It need not be signed by either party. *McAllister Brothers, Inc. v. A & S Transportation Co.*, 621 F.2d 519, 524 (2d Cir.1980); *Helen Whiting, Inc. v. Trojan Textile Corp.*, 307 N.Y. 360, 121 N.E.2d 367, 371 (1954). Thus, the parties entered into an agreement to arbitrate.

The trial court received no evidence tending to establish that Haua was fraudulently induced to enter the contract, or any other evidence which at law or in equity would serve to revoke the contract. *See* 9 U.S.C. § 2 (1970). The parties entered into a valid agreement to arbitrate. The only issue left for the trial court to decide is whether this claim falls within the terms of the arbitration agreement and thus is arbitrable.

A copy of the written agreement is attached to Haua's petition which was admitted in evidence at the plea in abatement hearing. The existence of a written agreement was established. TEX.R.CIV.EVID. 801(e)(2).

At the hearing on relator's request for arbitration Harvie Lindeman, the local branch manager for E.F. Hutton & Company at the time, testified that Haua was hired as a trainee in August 1987 and left the company in December 1987. No salary or monetary compensation was paid to Haua, though his salary was set according to a schedule at $1,500.00 per month. Relator was to provide the costs of materials, supervision, a place for study, several trips during training, the cost for taking the stockbroker licensing test, and continual training over a period of time. Classes were to commence in October 1987 and terminate in October 1988. Lindeman stated that Haua had not been sent on any trips during his tenure with Hutton but that he did receive part of the training program for the four months he was with Hutton.

 It is established as a matter of law that the parties entered into an agree-

ment to arbitrate which was reduced to writing. A dispute arising out of the parties' contract or a refusal to perform all or part of the contract does not affect the validity of the arbitration agreement. *Robert Lawrence Co. v. Devonshire Fabrics, Inc.*, 271 F.2d 402, 409–10 (2d Cir.1959), *cert. denied*, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960); *Miller v. Puritan Fashions Co.*, 516 S.W.2d 234, 238 (Tex.Civ.App. —Waco 1974, writ ref'd n.r.e.); 9 U.S.C. § 2 (1970). The issue as to whether there is a valid agreement to arbitrate is separable from the issue of whether the contract was repudiated or breached. The former is determined by the trial court and the latter by the arbitrator. *Robert Lawrence Co. v. Devonshire Fabrics, Inc.*, 271 F.2d at 409; *Miller v. Puritan Fashions Co.*, 516 S.W. 2d at 238. Haua presented no evidence to establish that there are grounds which "exist at law or in equity for the revocation of any contract" as required by section 2 of the Arbitration Act. Further, the issues raised by Haua are clearly referable to the agreement to arbitrate. A trial court abuses its discretion when it reaches a decision that is so arbitrary and unreasonable that it amounts to a clear and prejudicial error of law. *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985). We find that the trial court abused its discretion in failing to compel arbitration.

■ A writ of mandamus will issue to correct a clear abuse of discretion by the trial court when there is no adequate remedy by appeal. *Johnson v. Fourth Court of Appeals*, 700 S.W.2d at 917. The Texas Supreme Court has held that generally a writ will not issue to correct the incidental rulings of the trial court. A plea in abatement has traditionally been treated as one of these incidental rulings. *Abor v. Black*, 695 S.W.2d 564, 567 (Tex.1985). The rationale behind this rule is that the relator has an adequate remedy: he can proceed to a final judgment and appeal the case. This has been followed in venue cases, *Hendrick Medical Center v. Howell*, 690 S.W. 2d 42, 45 (Tex.App.—Dallas 1985, no writ)

(statute forbids interlocutory appeal, thus relief by mandamus would frustrate statute); *Morrison v. Williams*, 665 S.W.2d 212, 213 (Tex.App.—San Antonio 1984, no writ), as well as plea in abatement cases in which relator must proceed to try the same case in two different courts, *see Abor v. Black*, 695 S.W.2d at 567, and in arbitration cases when the trial court abated the proceedings pending the outcome of the arbitration. *See McMullen v. Yates*, 697 S.W. 2d 500, 501–02 (Tex.App.—San Antonio 1985, no writ).

■ However, a different rationale has been followed in discovery cases. The courts of appeal have granted mandamus relief to compel the trial court to order one party to provide requested discovery information and documents. In these cases, the courts have found that relator has no adequate remedy by appeal since it is pointless to force a party to trial without obtaining needed evidence. In *Jampole v. Touchy*, 673 S.W.2d 569 (Tex.1984), the Supreme Court stated that the failure to grant a relevant discovery request

> effectively prevents Jampole from proving the material allegations of his lawsuit. On appeal, it is unlikely he would be able to show that the trial court's errors were harmful under the standard set out in Rules 434 and 503.... Moreover, requiring a party to try his lawsuit, debilitated by the denial of proper discovery, only to have that lawsuit rendered a certain nullity on appeal, falls well short of a remedy by appeal that is "equally convenient, beneficial, and effective as mandamus." *Crane v. Tunks*, 160 Tex. 182, 328 S.W.2d 434, 439 (1959); *Way & Way v. Coca Cola Bottling Co.*, 119 Tex. 419, 29 S.W.2d 1067, 1071 (1930); *Cleveland v. Ward*, 116 Tex. 1, 285 S.W. 1063, 1068 (1926).

*Id.* at 576.

The United States Arbitration Act, 9 U.S.C. §§ 1–3 (1970), was enacted to fulfill two needs. The first and primary purpose of the Legislature is "to ensure judicial enforcement of privately made agreements to arbitrate," and "to place an arbitration agreement upon the same footing as other

contracts, where it belongs." *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. at 219, 105 S.Ct. at 1242; *Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 510–11, 94 S.Ct. 2449, 2452–53, 41 L.Ed.2d 270 (1974). The secondary goal of the Act is "to promote the expeditious resolution of claims" by "allow[ing] parties to avoid the costliness and delays of litigation." *Id.* Were we to deny mandamus relief in a case in which the trial court has refused to compel arbitration, we would be denying relator the benefits for which he contracted, i.e., an expeditious resolution of disputes. To compel the parties to proceed to a traditional trial on the merits, "only to have that lawsuit rendered a nullity on appeal," and finally reach the arbitration the parties originally agreed to is no adequate remedy under any definition. Even though the parties will eventually proceed to arbitration, to postpone it until after a trial and appeal renders their arbitration agreement meaningless. *See Jampole v. Touchy,* 673 S.W.2d at 576; *Cleveland v. Ward,* 116 Tex. 1, 285 S.W. 1063, 1068 (1926); *USX Corp. v. West,* 759 S.W.2d 764 (Tex.App.—Houston [1st Dist.] 1988, n.w.h.). The primary purpose of enforcing arbitration agreements (to place arbitration agreements on the same footing as other contracts) will be thwarted if the parties must first proceed to trial and then obtain a reversal. The benefits of arbitration (speed and lower cost) will be lost once the parties are forced to go through the litigation and appellate processes. Thus, we hold that relief by way of writ of mandamus will lie when the trial court has clearly abused its discretion in denying a motion to compel arbitration.

We recognize that we held that mandamus relief was unavailable in *McMullen v. Yates,* 697 S.W.2d at 501–02, where the trial court erroneously stayed the proceedings pending arbitration. Mandamus is not appropriate in that case because relator has an appeal available once a final judgment is entered and he loses no contract rights or benefits by availing himself of arbitration. In our case, however, where the stay has been denied, an appeal cannot restore relator's right to first seek arbitration. Once forced to trial, the benefits of arbitration are forever lost: the speed and economy of first going to arbitration are defeated. This benefit cannot be regained on remand.

Haua urges that mandamus is not an appropriate remedy in this instance because relator allowed too much time from the signing of Judge McKay's order to relator's filing a motion for leave to file petition for writ of mandamus. The trial court signed the order on May 27, 1988, but relator waited until October 7, 1988, to file for relief with this Court. Haua claims he requested a special setting and jury demand on June 24, 1988, for July 10, 1989, and has proceeded with discovery. He argues that, pursuant to *Bailey v. Baker,* 696 S.W.2d 255 (Tex.App.—Houston [14th Dist.] 1985, no writ), we should deny the petition due to the long delay.

The record before us contains none of the facts concerning Haua's discovery efforts, request for jury trial, special setting, or a trial date of July 10, 1989. Even accepting the fact that Haua has commenced discovery and the trial is set for the middle of 1989, Haua has not shown that he has been harmed by the delay in seeking this relief.

The writ of mandamus will issue only in the event that Judge McKay fails to rescind his order denying relator's motion for arbitration.