**PRUDENTIAL–BACHE SECURITIES, INC., et al., Relators,**

v.

**Honorable Margarito GARZA, Judge of the 148th District Court of Nueces County, Texas, Respondent.**

**No. 13–92–620–CV.**

Court of Appeals of Texas, Corpus Christi.

Feb. 4, 1993.

Corbet F. Bryant, Jr., Stephen, J. Pierce, Jr., Carrington, Coleman, Sloman & Blumenthal, Dallas, for Relators.

F. Edward Barker, Barker & King, Frank E. Weathered, Dunn, Cason & Weathered, Corpus Christi, for Interested Parties.

Before FEDERICO G. HINOJOSA, Jr., KENNEDY, and DORSEY, JJ.

## OPINION

FEDERICO G. HINOJOSA, Jr., Justice.

Prudential–Bache Securities, Inc., Phillip Graham, and Glenn Orr, relators, petition this Court for a writ of mandamus directing the Honorable Margarito Garza, Judge of the 148th District Court of Nueces County, Texas, to stay proceedings Thomas and Julia Carlisle brought against relators and to order Thomas Carlisle's claims to arbitration. We conditionally grant the petition.

Prudential–Bache (PBS) is a brokerage house in the business of buying and selling securities on the New York Stock Exchange. In 1975, PBS hired Thomas Carlisle as a financial consultant for PBS in its Corpus Christi office, where he worked with Graham and Orr. Thomas Carlisle specifically agreed in writing to submit any employment or termination controversy to arbitration. Julia Carlisle was not a party to the agreement.

In November 1990, Carlisle resigned from PBS and began working with a competitor, Merrill Lynch, Pierce, Fenner & Smith, Inc. In September 1991, PBS requested the New York Stock Exchange Department of Arbitration to grant a permanent injunction and damages against Carlisle for, among other things, slandering PBS and converting confidential information taken from PBS.

In November 1991, Carlisle filed suit against PBS, Graham, and Orr in state district court for defamation, intentional infliction of emotional distress, and negligence. Carlisle specifically alleged that PBS, Graham, and Orr had been:

(a) informing persons that the Plaintiff had resigned due to "legal problems"

when the same was not true and Defendants knew the same was not true;

(b) issuing written communications to the Securities Regulatory authorities in December, 1990, that the Plaintiff had illegally taken $16,000.00 from a customer's account, when the Defendants knew or had every reason to know that the same was untrue;

(c) stating to various securities authorities that the Plaintiff had traded in an account of a customer without that customer's consent or permission, when they knew or had reason to know, that such comments were untrue;

(d) failing to correct the impression with third persons that the Plaintiff had the disease of AIDS;

(e) informing third parties that the Plaintiff had been required to leave Prudential–Bache due to financial problems when they knew or had reason to know, the same to be untrue;

(f) informing by written communications to various regulatory agencies that customer complaints had been lodged against the Plaintiff due to the Plaintiff's actions, when in fact if any such complaints existed, they occurred as a direct and sole result of the Defendants' actions;

(g) [taking] several actions calculated to interfere with the Plaintiff's employment agreement at Merrill Lynch, including notifying his current employers of the aforesaid untrue allegations against Plaintiff in an apparent attempt to secure the termination of his employment at Merrill Lynch.

In December 1991, relators moved to abate the state court proceedings and compel arbitration under the Federal Arbitration Act. In April 1992, the trial court denied their motions. In June 1992, Julia Carlisle joined in the suit as a party plaintiff, alleging Graham committed sexual assault and battery.

 Mandamus issues only to correct a clear abuse of discretion or violation of a legal duty when that abuse cannot be remedied by appeal. *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992). A trial court abuses its discretion by failing to correctly apply the Federal Arbitration Act to the facts of a case. *Jack B. Anglin Co. v. Tipps,* 842 S.W.2d 266, 271 (Tex.1992); *Merrill Lynch, Pierce, Fenner, and Smith, Inc. v. Longoria,* 783 S.W.2d 229, 231 (Tex.App.—Corpus Christi 1989, orig. proceeding). Texas does not allow interlocutory appeal from a trial court's action on a request to compel arbitration pursuant to the Federal Arbitration Act. *Jack B. Anglin Co.,* 36 Tex.Sup.Ct.J. at 209, 842 S.W.2d 266. Arbitration is intended to be a rapid, inexpensive alternative to traditional litigation, so mandamus will issue when a trial court erroneously denies a motion to compel arbitration under the Federal Arbitration Act. *Jack B. Anglin Co.,* 36 Tex.Sup. Ct.J. at 209, 842 S.W.2d 266; *Shearson Lehman Hutton, Inc. v. McKay,* 763 S.W.2d 934, 938–39 (Tex.App.—San Antonio 1989, orig. proceeding).

 When deciding if disputed claims fall within the scope of an arbitration clause under the Federal Arbitration Act, Texas courts apply Texas procedure and federal substantive law. *Jack B. Anglin Co.,* 36 Tex.Sup.Ct.J. at 206–08, 842 S.W.2d 266. When a party contests the applicability of an arbitration agreement, Texas procedure requires the trial court to hold a summary hearing and apply the terms of the arbitration agreement to the undisputed facts shown by affidavits, pleadings, discovery, and stipulations. If admissible evidence shows a dispute over material facts, the trial court must conduct an evidentiary hearing to determine those disputed material facts. *Id.* at 206–07, 842 S.W.2d 266. A trial court, upon motion to stay a proceeding pending arbitration, must determine whether the parties agreed to arbitrate and the scope of the agreement. Once the trial court determines that the issue falls within the arbitration agreement, it then must compel arbitration. *See Shearson Lehman Hutton, Inc. v. Tucker,* 806 S.W.2d 914, 919 (Tex.App.—Corpus Christi 1991, writ dism'd w.o.j.); *Longoria,* 783 S.W.2d at 230; *McKay,* 763 S.W.2d at 936–37.

In the present case, the written agreement to arbitrate was asserted in the pleadings and proved at the hearing, and the parties do not contest its validity. The present dispute concerns whether the various claims alleged by the Carlisles fall within the agreement's scope.

■ The Federal Arbitration Act is national substantive law governing questions of the validity and the enforceability of arbitration agreements under its coverage. *Moses H. Cone Memorial Hosp. v. Mercury Constr.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 845 (2nd Cir.1987). Federal law, which follows general principles of contract law, determines whether a party is bound by an arbitration clause. *Genesco*, 815 F.2d at 845; *McKay*, 763 S.W.2d at 937.

■ Federal courts hold that public policy favors arbitration and that doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the issue is contract construction or waiver, delay, or other defenses to arbitrability. *Moses H. Cone Memorial Hosp.*, 460 U.S. at 24–25, 103 S.Ct. at 941; *Genesco*, 815 F.2d at 846; *see also Tucker*, 806 S.W.2d at 919; *Longoria*, 783 S.W.2d at 230. Under federal law, whether a particular claim falls within the scope of the arbitration agreement depends on the facts alleged in the complaint rather than on the legal causes of action asserted. If the allegations underlying the claims touch matters covered by the arbitration agreement, then they must be arbitrated, regardless of the legal labels attached to the claims. *Genesco*, 815 F.2d at 846.

■ Federal courts, construing the present arbitration agreement, which is common in the securities and commodities industry, hold that claims involving significant aspects of the employment relationship are arbitrable. Post-termination conduct or statements that implicate the employee's job performance or his relationship with a securities agency are generally arbitrable. Specifically, a tort claim for post-termination conduct is arbitrable if the claim requires the evaluation of a party's performance during the contractual relationship. *Fleck v. E.F. Hutton Group, Inc.*, 891 F.2d 1047, 1052 (2nd Cir.1989); *Aspero v. Shearson Am. Express, Inc.*, 768 F.2d 106, 109 (6th Cir.1985); *Morgan v. Smith Barney, Harris Upham & Co.*, 729 F.2d 1163, 1167–68 (8th Cir.1984). However, mere "but for" causation between the employment relationship and the tort claim does not create an arbitrable dispute. *See Fleck*, 891 F.2d at 1052; *Aspero*, 768 F.2d at 109; *Morgan*, 729 F.2d at 1167–68. For example, if a Texas PBS broker was transferred to New York by PBS and, on his day off, was walking down the street and was accidentally run over by another PBS employee, his claim against PBS would not be arbitrable merely because he would not have been in New York *but for* his employment with PBS.

■ We hold that Thomas Carlisle's allegations (a), (b), (c), (e), (f), and (g), *supra*, all involve significant aspects of the employment relationship. Resolving those allegations requires evaluating Thomas Carlisle's performance as a broker during his contractual relationship with PBS. However, we further hold that neither allegation (d), concerning PBS's failure to correct a third person's impression that Thomas Carlisle contracted AIDS, nor the allegations concerning the sexual assault and battery of Julia Carlisle involve significant aspects of Thomas Carlisle's employment relationship. Those allegations are outside the scope of the present arbitration agreement. *See Fleck*, 891 F.2d at 1053.

■ An arbitration agreement must be enforced despite the presence of other parties. *Tenneco Resins, Inc. v. Davy Int'l*, 770 F.2d 416, 422 (5th Cir.1985); *Longoria*, 783 S.W.2d at 231. Even though Julia Carlisle is a party to the suit, the trial court cannot order her to arbitrate her claims against relators and her presence in the suit does not defeat the relators' right to have Thomas Carlisle's claims arbitrated.

■ The Carlisles argue that relators requested arbitration of all the claims, failing to segregate arbitrable from non-arbi-

trable claims, and they contend that relators have therefore waived their request to compel arbitration of any of the claims. Relators assert that all of Thomas Carlisle's claims are subject to arbitration. We do not agree that all of the claims are subject to the arbitration agreement, but the Carlisles provide no authority for the proposition that a party seeking to compel arbitration must limit its request to precisely those claims the court later finds to be arbitrable. Consequently, we hold that relators have not waived their request.

We conditionally grant the writ of mandamus and direct the trial court to issue an order compelling arbitration under the Federal Arbitration Act of Thomas Carlisle's claims (a), (b), (c), (e), (f), and (g), *supra.*