TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00280-CV






Robert Sykes, Appellant



v.



Applied Materials, Inc., Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT


NO. 98-12304, HONORABLE MARY PEARL WILLIAMS, JUDGE PRESIDING








CONSOLIDATED ON APPEAL WITH








NO. 03-00-00383-CV






Robert Sykes, Appellant



v.



Applied Materials, Inc., Appellee






FROM THE COUNTY COURT AT LAW NO. 1 OF TRAVIS COUNTY


NO. 246,585A, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING







 Robert Sykes appeals from the take-nothing judgments rendered against his claims
after arbitration. He contends that the county court erred by finding that his complaints, arising after
the termination of his employment with Applied Materials, Inc. ("AMI"), were within the arbitration
agreement between the parties; Sykes does not challenge the district-court judgment in his brief. We
will affirm the judgments of both trial courts.


BACKGROUND



 When hired by AMI, Sykes agreed that "any controversy or claim arising out of or
relating to my employment or the termination of my employment . . . shall be finally settled by
binding arbitration . . . ."

 Sykes filed a discrimination claim against AMI while working there, and added other
complaints after AMI fired him. He eventually sued AMI in district court, alleging slander, libel,
wrongful termination, retaliation, fraud, and racial discrimination. The district court abated these
claims to allow the parties to engage in binding arbitration.

 While his suit was pending, Sykes went to work for Distribution Dynamics, Inc.
("DDI"), an AMI supplier. Sykes alleged that he was in line for a promotion to delivery driver,
which would include making deliveries to AMI. He alleged that his DDI supervisor told him that
he would not get the promotion because an AMI employee told a DDI vice president about Sykes's
pending discrimination suit against AMI. The next month, Sykes was fired from DDI, purportedly
as part of a reduction in force.

 Sykes sued both AMI and DDI in county court in Travis County, alleging retaliation
and tortious interference with his DDI contract. His claims against AMI were abated and
consolidated at arbitration with the district-court claims against AMI.

 The arbitrator decided that Sykes should take nothing by any of his claims against
AMI. The district court entered an agreed judgment that Sykes take nothing by his claims against
AMI. The county court severed Sykes's claims against DDI from those against AMI and entered an
agreed judgment that Sykes take nothing by his claims against AMI.


DISCUSSION


 Though Sykes filed notices of appeal from the orders of both courts, in his brief he
challenges only the county court's order requiring arbitration of his claims against AMI for
retaliation and interference with a prospective labor contract. He contends that such claims were not
within the scope of the arbitration agreement because (1) his allegations would not require the fact-finder to inquire into either his job performance at AMI or the reasons for his termination; and (2)
he could not reasonably have foreseen, when entering the contract, that it would apply to events
occurring so long after the end of his AMI employment.

 Both issues turn on the trial court's legal interpretation of the arbitration clause. 
Because we have no evidence before us other than the employment contract and its arbitration
provision, we will conduct a de novo review of the county court's decision. See Nationwide of
Bryan, Inc. v. Dyer, 969 S.W.2d 518, 520 (Tex. App.--Austin 1998, no pet.); see also Russ Berrie
and Co., v. Gantt, 998 S.W.2d 713, 716 (Tex. App.--El Paso 1999, no pet.). The law strongly
favors arbitration. See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25;
Prudential Sec., Inc. v. Marshall, 909 S.W.2d 896, 898 (Tex. 1995). In deciding whether to compel
arbitration, courts must determine whether a valid, enforceable arbitration agreement exists and, if
so, whether the agreement covers the dispute. BDO Seidman v. Miller, 949 S.W.2d 858, 860 (Tex.
App.--Austin 1997, writ dism'd w.o.j.). In determining whether the agreement covers the dispute,
courts focus on the factual allegations of the complaint rather than the legal causes of action asserted. 
Marshall, 909 S.W.2d at 900. The party opposing arbitration bears the burden to prove that the
agreement does not cover the dispute. Id. Courts must resolve any doubts in favor of arbitration;
courts should not deny arbitration unless the agreement is not susceptible of an interpretation that
would cover the dispute at issue. Id. at 899.

 Courts have interpreted arbitration clauses similar to the one in this case to include
"any dispute involving significant aspects of the employment relationship or depending upon the
evaluation of the employee's performance . . . ." See id. (citing Fleck v. E.F. Hutton Group, Inc.,
891 F.2d 1047, 1053 (2d Cir. 1989)). In Marshall, the plaintiffs alleged that, after they left
Prudential, their former employer made slanderous statements (e.g., that they were dishonest and
engaged in unethical brokerage practices) intending to ruin their careers as brokers. See 909 S.W.2d
at 898. The supreme court concluded that these claims were within the arbitration clause. The court
held that the plaintiffs' contention that the claims were outside the scope of the arbitration agreement
was 


 inherently inconsistent with their allegations that the statements were uttered to
further a conspiracy to blackball them from the securities industry and tended to
injure them in their professions as brokers. In order to injure the plaintiffs'
professional reputations, the statements must, as a matter of logic, at least touch upon
their performance as brokers, making the claims referable to arbitration.

 

Id. at 900. Other courts have found similar allegations within the scope of similar arbitration
agreements. See Fleck, 891 F.2d at 1052 (employer stated that broker lost broker's license,
performed poorly, and broke regulations); Morgan v. Smith Barney, Harris Upham & Co., 729 F.2d
1163, 1167-68 (8th Cir. 1984) (employer stated that broker lost license and that investigation of
irregularities led to firing); Smith Barney Shearson, Inc. v. Finstad, 888 S.W.2d 111, 116 (Tex.
App.--Houston [1st Dist.] 1994, orig. proceeding) (employer inaccurately reported client
complaints, stated that broker was fired for cause, and indicated to client that he might have done
something illegal); Prudential-Bache Sec., Inc. v. Garza, 848 S.W.2d 803, 805-07 (Tex.
App.--Corpus Christi 1993, orig. proceeding) (employer stated that broker took money, traded
illegally, and quit because of financial problems). Courts also have carved out some statements as
not within the arbitration agreements because they did not address significant aspects of the
employment relationship. See Finstad, 888 S.W.2d at 116 (employer stated that broker was a loser,
a pimp, and disease-ridden); Garza, 848 S.W.2d at 807 (employer failed to correct impression that
broker had AIDS); see also Fleck, 891 F.2d at 1049 (employer stated that broker was disbarred
lawyer); Morgan, 729 F.2d at 1167 (employer stated that broker stole items from fellow employees'
desks).

 Sykes contends that his claims fall within the latter strand of cases. He argues that
his claims are not arbitrable because he is not alleging that AMI defamed him about his work
performance or about the basis for his termination. Sykes admits that he filed the discrimination
claim and that AMI reported that claim, but contends that the substance of his claim is not at issue
in the county court. Because his claims do not require the fact-finder to delve into his performance
at or his termination from AMI, he argues, they are not within the arbitration clause.

 AMI contends that Sykes's claims are within the arbitration agreement. It argues that,
like the libel and slander claims in Marshall, the retaliation claim relates to his employment and is
essentially a claim that AMI made statements that harmed him in his professional life. AMI
contends that the retaliation claim therefore should be arbitrated. See 909 S.W.2d at 897-900. AMI
also argues for arbitration of the tortious interference claims, drawing a parallel to the claim sent to
arbitration in Garza that the former employer took "several actions calculated to interfere with the
Plaintiff's employment agreement at Merrill Lynch, including notifying his current employers of the
aforesaid untrue allegations against Plaintiff in an apparent attempt to secure the termination of his
employment at Merrill Lynch." 848 S.W.2d at 806-07.

 We conclude that Sykes's claims in the second suit are within the arbitration
agreement. Sykes's petition in the original suit encompassed claims that AMI's racial discrimination
affected his daily work schedule and his advancement and caused his termination. He cannot
credibly argue now that there is no relationship between his former employment and the report by
his former employer that he claimed his former employment was riddled with discrimination. See
Marshall, 909 S.W.2d at 900. At the very least, "we cannot conclude with positive assurance that
the statements at issue here are not at least 'factually intertwined' with the arbitrable claims" from
the first lawsuit. Id. Accordingly, we cannot determine that Sykes's AMI contract is not susceptible
of an interpretation that it encompasses the county-court claims. Because we cannot so determine,
we must uphold the decision by the county court to abate for arbitration. See id. at 899-900. 

 By his second point of error, Sykes contends that the dispute is not arbitrable because
(1) the conduct occurred long after the termination and was of a sort that would not be foreseeable
within an employee's understanding of the arbitration clause, and (2) the controversy arose when he
was not employed, compensated, or otherwise receiving consideration.

 The language of the arbitration clause defeats these arguments. To decide the
coverage of the arbitration clause, 


 [w]e must ascertain whether the parties intended the particular dispute to be
arbitrated as evidenced by the language contained in the agreement. The second
principle commands that when contract language is ambiguous or unclear, a "healthy
regard" for the federal policy favoring arbitration requires that "any doubts
concerning the scope of arbitrable issues should be resolved in favor of arbitration." 



Morgan, 729 F.2d at 1165 (citing Moses H. Cone 460 U.S. at 42); see also Garza, 808 S.W.2d at
847. The arbitration clause's scope is broad, encompassing any controversy that arises out of or
relates to the employment or its termination. As just discussed, Sykes claimed that discrimination
permeated his employment at AMI, and AMI's report of that fact is related to his employment at
AMI. The clause does not contain a time limit within which the controversy or claim must arise. 
The clause clearly contemplates that claims can be filed after the end of the employment,
compensation, and consideration, else the provision for arbitration of termination-related claims
would be a nullity. Just more than sixteen months passed between the end of Sykes's AMI
employment and the events alleged in the second cause. Even if there is some end to the reach of
this clause, we conclude that a conversation about the employee's overriding view of his
employment, (1) conducted with a subsequent employer within two years of the end of the relevant
employment is not outside the reach of this clause. We overrule point two.


CONCLUSION


 We affirm the judgments.



 

 Mack Kidd, Justice

Before Justices Kidd, B. A. Smith and Puryear

Affirmed

Filed: May 17, 2001

Do Not Publish

1. We reject any implication from Sykes's brief that AMI's report of Sykes's actions is the
equivalent of slashing Sykes's tires or burning his house.


loyer took "several actions calculated to interfere with the
Plaintiff's employment agreement at Merrill Lynch, including notifying his current employers of the
aforesaid untrue allegations against Plaintiff in an apparent attempt to secure the termination of his
employment at Merrill Lynch." 848 S.W.2d at 806-07.

 We conclude that Sykes's claims in the second suit are within the arbitration
agreement. Sykes's petition in the original suit encompassed claims that AMI's racial discrimination
affected his daily work schedule and his advancement and caused his termination. He cannot
credibly argue now that there is no relationship between his former employment and the report by
his former employer that he claimed his former employment was riddled with discrimination. See
Marshall, 909 S.W.2d at 900. At the very least, "we cannot conclude with positive assurance that
the statements at issue here are not at least 'factually intertwined' with the arbitrable claims" from
the first lawsuit. Id. Accordingly, we cannot determine that Sykes's AMI contract is not susceptible
of an interpretation that it encompasses the county-court claims. Because we cannot so determine,
we must uphold the decision by the county court to abate for arbitration. See id. at 899-900. 

 By his second point of error, Sykes contends that the dispute is not arbitrable because
(1) the conduct occurred long after the termination and was of a sort that would not be foreseeable
within an employee's understanding of the arbitration clause, and (2) the controversy arose when he
was not employed, compensated, or otherwise receiving consideration.

 The language of the arbitration clause defeats these arguments. To decide the
coverage of the arbitration clause, 


 [w]e must ascertain whether the parties intended the particular dispute to be
arbitrated as evidenced by the language contained in the agreement. The second
principle commands that when contract language i