COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

                                                                              )

                                                                              )

                                                                              )             
No.  08-04-00372-CV

                                                                              )

IN RE: PEOPLE=S CHOICE HOME LOAN,       )                   AN ORIGINAL

INC.,                                                                     )

                                                                              )     PROCEEDING IN MANDAMUS

                                                                              )

                                                                              )

                                                                              )

 

 

OPINION
ON PETITION FOR WRIT OF MANDAMUS

 

In this original
proceeding, Relator People=s
Choice Home Loan, Inc. (APeople=s Choice@)
seeks mandamus relief from an order denying its motion to abate and compel
arbitration.  We conditionally grant
mandamus relief.

BACKGROUND

In December 2002,
Maricela Jimenez decided to apply for a home equity loan on her El Paso
residence.  Mrs. Jimenez met with Octavio
Realzola, a mortgage broker doing business under the assumed name of Amiracle
Mortgage Group.  Mr. Realzola arranged
for a home equity loan through People=s
Choice.  After the closing, Mrs. Jimenez
realized that she had been overcharged in fees and other costs.  People=s
Choice later sold the loan to GMAC Mortgage Corporation (AGMAC@).








In March 2004,
Mrs. Jimenez notified both People=s
Choice and GMAC that she was overcharged for the loan, but neither responded to
her inquiry, conducted any investigation, or made any contact with her.  On June 17, 2004, real parties in interest,
Mrs. Jimenez and her husband Mr. Enrique Jimenez (Athe
Jimenezes@), filed
suit against Octavio Realzola d/b/a Amiracle Mortgage Group, People=s Choice, and GMAC, seeking declaratory
relief in connection with the loan fees, cancellation of the loan, and the
return of all sums of money paid to the defendants.

On August 19,
2004, People=s Choice
filed its original answer and asserted as an affirmative defense that the
contract between People=s
Choice and the plaintiffs was governed by an arbitration agreement.  On September 20, 2004, People=s Choice filed a motion to abate and
compel arbitration.  In the motion,
People=s Choice
asserted that the Jimenezes had signed a valid and enforceable arbitration
agreement.  People=s
Choice also alleged that the other defendants, Mr. Realzola and GMAC, were not
opposed to its request for mandatory arbitration.  The arbitration agreement was attached to the
motion, along with an affidavit from the vice president of People=s Choice as the attesting custodian of
the business record.

On November 2,
2004, the Jimenezes filed a response to the motion, arguing that the
arbitration agreement was not enforceable because:  (1) it was procedurally and substantively
unconscionable; (2) it lacked consideration because Mr. Jimenez did not apply
for or receive a loan; (3) People=s
Choice waived its right to arbitrate by failing to make a timely demand for
arbitration; and (4) People=s
Choice was not the real party in interest because the loan made the subject of
the lawsuit was currently held by GMAC and the plaintiffs were seeking
forfeiture of the principal, which was not owned by People=s Choice.








On November 12,
2004, the trial court conducted a hearing on the motion to compel
arbitration.  At the hearing, counsel for
the Jimenezes argued that the arbitration agreement was substantively
unconscionable because under the parties=
agreement, the exceptions to arbitrable disputes were all causes of actions
that a lender, not a borrower would bring. 
The Jimenezes=
counsel also argued that having to go to Dallas to arbitrate would be Asignificantly more expensive@ for him and his clients.  With regard to substantive unconscionability,
the Jimenezes= counsel
asserted that the other defendants would not be subject to arbitration and
therefore, the cause would still remain in the trial court.  The Jimenezes=
counsel also argued that the demand for arbitration was not within the sixty
days required under the agreement, and that with respect to Mr. Jimenez, there
was a lack of consideration because he did not receive nor request any loan in
the transaction.  No witnesses testified
at the hearing and no evidence was otherwise admitted.  At the conclusion of the hearing, the trial
court denied the motion to compel arbitration. 
People=s Choice
now brings this original proceeding in mandamus.[1]

DISCUSSION

INTERLOCUTORY
APPEAL OR MANDAMUS








People=s Choice asserts that the arbitration
agreement executed by the Jimenezes is governed by the Federal Arbitration Act
(AFAA@)
because the loan transaction involves interstate commerce and the agreement
expressly provides that arbitration will be conducted by the American
Arbitration Association and be governed by the FAA.  In its motion to compel arbitration, People=s Choice stated that the arbitration
agreement specifically provided that it was governed by the FAA, but it argued
that the agreement was enforceable under either the FAA or the Texas General
Arbitration Act (ATGAA@). 
The trial court, however, did not specify in its order whether the FAA
or the TGAA governed the arbitration agreement at issue.  Out of an abundance of caution, People=s Choice has filed both an
interlocutory appeal and a petition for writ of mandamus.  See Russ Berrie & Co., Inc. v.
Gantt, 998 S.W.2d 713, 714-15 (Tex.App.--El Paso 1999, no pet.)(a
party seeking enforcement of arbitration under the FAA must pursue mandamus
relief, whereas a party seeking enforcement under the TGAA may seek relief
through an interlocutory appeal). 
Therefore, we first consider whether the FAA or the TGAA applies to the
arbitration agreement in question.








The FAA applies to
all suits in state or federal court when the dispute concerns a Acontract evidencing a transaction
involving commerce.@  Jack B. Anglin Co., Inc. v. Tipps, 842
S.W.2d 266, 269-70 (Tex. 1992)(orig. proceeding).  ACommerce@ is broadly defined and encompasses
contracts relating to interstate commerce. 
In re Gardner Zemke Co., 978 S.W.2d 624, 626 (Tex.App.--El Paso
1998, orig. proceeding).  The FAA does
not require a substantial effect on interstate commerce; rather, it requires
only that commerce be involved or affected. 
In re L & L Kempwood Assocs., L.P., 9 S.W.3d 125, 127 (Tex.
1999)(orig. proceeding)(per curiam). 
When there is no express agreement to arbitrate under the FAA, a party
may establish the applicability of the FAA by showing that the transaction
affects or involves interstate commerce. 
See Stewart Title Guar. Co. v. Mack, 945 S.W.2d 330, 333
(Tex.App.--Houston [1st Dist.] 1997, writ dism=d
w.o.j.).  Interstate commerce may be
shown in several ways, including:  (1)
location of headquarters in another state; (2) transportation of materials
across state lines; (3) manufacture of parts in a different state; (4) billings
prepared out of state; and (5) interstate mail and phone calls in support of a
contract.  See Mack, 945 S.W.2d at
333; Tipps, 842 S.W.2d at 270.

In this case, the
arbitration agreement expressly states:

Each arbitration,
including the selecting of the arbitrator, will be administered by the American
Arbitration Association (the >AAA=) pursuant to its Commercial
Arbitration Rules.  Each arbitration will
be governed by the Federal Arbitration Act (Title 9 of the United States Code).

 

Thus, the contract contains an
express agreement to arbitrate under the FAA. 
See In re Kellogg Brown & Root, 80 S.W.3d 611, 617
(Tex.App.--Houston [1st Dist.] 2002, orig. proceeding) (when parties agree to
arbitrate under the FAA, they are not required to establish that the
transaction at issue involves or affects interstate commerce); but see Russ
Berrie & Co., 998 S.W.2d at 715 (for purposes of subject matter
jurisdiction, jurisdiction cannot be conferred by the parties= agreement).  We also find, however, there was evidence in
the record to show that the loan transaction involved interstate commerce,
namely:  the Jimenezes are Texas
residents; Mrs. Jimenez contracted for a home equity loan with People=s Choice, a Wyoming corporation;
and  People=s
Choice obtained a security interest lien on the Jimenezes= home in El Paso, Texas.  The 
parties= contract
clearly involved interstate commerce and the arbitration agreement expressly
adopted the FAA, therefore, we conclude the FAA applies.

DENIAL
OF MOTION TO COMPEL ARBITRATION

Standard
of Review








A writ of mandamus
will issue if the trial court has clearly abused its discretion and there is no
other adequate remedy of law.  Walker
v. Packer, 827 S.W.2d 833, 840 (Tex. 1992)(orig. proceeding).  With respect to resolution of factual issues
or matters within the trial court=s
discretion, the reviewing court may not substitute its judgment for that of the
trial court.  Walker, 827 S.W.2d
at 839-40.  The relator must show that
the trial court could reasonably have reached only one decision.  Id. 
The reviewing court cannot disturb the trial court=s decision unless it is shown to be
arbitrary and unreasonable.  Id.  With respect to the trial court=s decision of legal issues, our review
is much less deferential.  Id. at
840.  A trial court has no discretion in
determining what the law is or applying the law to the facts.  Id. 
Thus, a clear failure by the trial court to analyze or apply the law
correctly will constitute an abuse of discretion.  Id. 
When a trial court erroneously denies a motion to arbitrate under the
FAA, mandamus is the appropriate remedy. 
In re Halliburton Co., 80 S.W.3d 566, 573 (Tex. 2002)(orig.
proceeding), cert. denied, 537 U.S. 1112, 123 S.Ct. 901, 154 L.Ed.2d 785
(2003); In re Bruce Terminix Co., 988 S.W.2d 702, 703-04 (Tex.
1998)(orig. proceeding)(There is no adequate remedy by appeal for denial of the
right to arbitrate).  

Existence
and Scope of Arbitration Agreement








A party seeking to
compel arbitration must establish the existence of an arbitration agreement and
show that the claims raised fall within the scope of that agreement.  In re Oakwood Mobile Homes, Inc., 987
S.W.2d 571, 573 (Tex. 1999)(orig. proceeding), abrogated on other grounds by
In re Halliburton Co., 80 S.W.3d 566, 572 (Tex. 2002)(orig.
proceeding).  Once the party seeking to
compel arbitration proves that a valid arbitration agreement exists, both state
and federal policy favors arbitration and any doubts regarding the scope of the
agreement are resolved in favor of arbitration. 
See J. M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 227 (Tex.
2003); In re FirstMerit Bank, N.A., 52 S.W.3d 749, 753 (Tex. 2001)(orig.
proceeding).  If the party seeking arbitration
carries its initial burden, the burden then shifts to the party resisting
arbitration to present evidence on its defenses to the arbitration
agreement.  In re Oakwood Mobile
Homes, Inc., 987 S.W.2d at 573.  

Applying state
contract principles, we first determine whether a valid agreement to arbitrate
exists.  In re Bunzl USA, Inc.,
155 S.W.3d 202, 209 (Tex.App.‑-El Paso 2004, orig. proceeding); see
also Coker v. Coker, 650 S.W.2d 391, 393‑94 (Tex. 1983)(primary
concern of a court in construing a written contract is to ascertain the true
intent of the parties as expressed in the instrument).  In this case, as part of the loan
transaction, the Jimenezes each signed the Agreement for the Arbitration of
Disputes.  This arbitration agreement
provides, in part:

If you [Maricela Jimenez and Enrique
Jimenez] and we [People=s
Choice] are not able to resolve our differences informally, you and we agree
that any dispute, regardless of when it arose, shall be settled, at your option
or ours, by arbitration in accordance with this Agreement.  Judgement on the arbitrator=s award may be entered in any court
having jurisdiction.  This Agreement
shall also apply to any dispute with our agents, successors or assigns.

 

This Agreement is made
in consideration of our processing of your inquiry or application for a loan
secured by the property identified above (>Loan=) at the interest rate(s) that you have
been or will be quoted.  If your
application is approved and the Loan is funded, this Agreement is also made in
further consideration of our funding of the Loan at the interest rate(s)
referenced in the Loan documents.  This
Agreement is effective and binding on both you and us when you sign below.  If you have any questions, you should
consult you own lawyer before you sign this Agreement.

 

Dispute:  For purposes of this Agreement, a dispute is
any claim or controversy of any nature whatsoever arising out of or in any way
related to the Loan; the arranging of the Loan; any application, inquiry or
attempt to obtain the Loan; any Loan documents; the servicing of the Loan; or
any other aspect of the Loan transaction. 
It includes, but is not limited to, federal or state contract, tort,
statutory, regulatory, common law and equitable claims.  A dispute does not include those items
described in the paragraph labeled >Exceptions,= below.

 

                                                              .               .               .








Exceptions:  The following are not disputes subject to
this Agreement:  (1) any judicial or
non-judicial foreclosure proceeding against any real or personal property that
serves as collateral for the loan, whether by the exercise of any power of sale
under any deed of trust, mortgage, other security agreement or instrument or
under applicable law, (2) the exercise of any self-help remedies (including
repossession and setoff rights) and (3) provisional or ancillary remedies with
respect to the loan or any collateral for the loan such as injunctive relief,
sequestration, attachment, replevin or garnishment, the enforcement of any
assignment of rents provision in any loan documents, the obtaining of
possession of any real property collateral for the loan by an action for
unlawful retainer or the appointment of a receiver by a court having
jurisdiction.  This means that nothing in
this Agreement shall limit your right or our right to take any of these
actions.  The institution and/or
maintenance of any action or remedy described in this paragraph shall not
constitute a waiver of your right or our right to arbitrate any dispute subject
to this Agreement.

 

                                                              .               .               .

 

BY SIGNING BELOW
YOU ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTOOD THIS AGREEMENT AND THAT YOU
AGREE TO ALL OF ITS TERMS.  YOU ALSO
ACKNOWLEDGE THAT YOU HAVE RECEIVED A COPY OF THIS AGREEMENT.         

 

THIS CONTRACT
CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES.  [Emphasis in original].

 

A plain reading of the parties= agreement establishes that the parties= did intend to submit disputes to
arbitration.  Further, Mrs. Jimenez and
Mr. Jimenez each signed the arbitration agreement.  A party=s
signature on the written contract is Astrong
evidence@ that the
party unconditionally assented to the contract terms.  In re Bunzl USA, Inc., 155 S.W.3d at
209, citing 1 Arthur Linton
Corbin, Corbin on Contracts '
2.10, at 168 (Joseph M. Perillo rev., 1993)). 








In their response
to the motion to compel arbitration, the Jimenezes argued that the arbitration
agreement was not enforceable because it lacked consideration.  Specifically, the Jimenezes asserted that it
was not supported by consideration because Mr. Jimenez did not apply for or
receive a loan.  There is no dispute that
Mr. Jimenez did not apply for or obtain the loan, but did co-sign the arbitration
agreement.  Under Texas law, a non-signatory
plaintiff may be compelled to arbitrate if its claims are Abased on a contract@ containing an agreement to
arbitrate.  In re Kellogg Brown &
Root, Inc., 166 S.W.3d 732, * 6 (Tex. 2005); In re FirstMerit Bank, N.A.,
52 S.W.3d at 755.  Mr. Jimenez brought
suit based on the parties=
contract and therefore subjected himself to the contract=s
terms, including the arbitration agreement. 
See In re FirstMerit Bank, 52 S.W.3d at 756.  We conclude that People=s Choice established the existence of
an arbitration agreement between People=s
Choice and the Jimenezes.

We next consider
whether the claims raised by the Jimenezes fall with the scope of the
arbitration agreement.  In their
petition, the Jimenezes alleged People=s
Choice charged more than three percent of the amount of the loan for the
origination, evaluation, maintenance, recording, insuring, and servicing of the
extension of credit.  They also alleged
that People=s Choice
failed to sign the acknowledgment of fair market value on the property and
committed fraudulent misrepresentation by charging interest above the ordinary
rate while charging Mrs. Jimenez a fee to reduce the interest rate.  We conclude that the allegations against
People=s Choice
indeed fell within the scope of the arbitration agreement as they constituted
claims arising out of or related to the servicing of the loan and/or other
aspects of the loan transaction.  








Relatedly, the
Jimenezes asserted in their response to the motion that People=s Choice, the party seeking
arbitration, was not the real party in interest because the loan is currently
held by GMAC.  They argued that the
relief sought in their lawsuit was forfeiture of the principal, which was not
owned by People=s
Choice.  However, in reviewing their
original petition it is clear that they also sought a judgment against People=s Choice based on their fraudulent
conduct claim and the return of servicing fees specifically paid to People=s Choice at the closing.  Therefore, their contention is without merit
and does not defeat the existence of an arbitration agreement or the fact that
the claims they asserted fell within the scope of that agreement.

Defenses
to Arbitration

Arbitration
Not Timely Demanded

The Jimenezes
complained in their response that People=s
Choice had failed to timely demand arbitration after their notice of overcharge
and service of their original petition and had therefore, waived its right to
arbitration.  We disagree.

The arbitration
agreement provides:

Either you [Maricela Jimenez and
Enrique Jimenez] or we [People=s
Choice] can request that a dispute be submitted to arbitration.  Either you or we can do this before a lawsuit
(which is usually initiated by the filing of a >complaint=) has been served or within 60 days
after a complaint, an answer, a counterclaim or an amendment to a complaint has
been served.

 








Here, People=s
Choice filed its original answer on August 19, 2004.  According to the agreement, either party can
request arbitration within sixty days after a complaint, answer, a
counterclaim, or an amendment to a complaint has been served.  People=s
Choice filed its motion to abate and compel arbitration on September 20,
2004.  The request for arbitration was
well within the sixty-day period, therefore People=s
Choice made a demand for arbitration in a timely manner.  Because public policy favors arbitration,
there is a strong presumption against waiver of contractual arbitration
rights.  See In re Bruce Terminix Co.,
988 S.W.2d at 704.  Further, courts will
not find waiver if a party merely takes part in litigation unless it has
substantially invoked the judicial process to its opponent=s detriment.  In re Bruce Terminix Co., 988 S.W.2d
704.  Whether a party=s conduct waives its arbitration rights
under the FAA is a question of law.  Id.
at 703-04.  Since People=s Choice timely requested its demand
for arbitration and there was no evidence that the Jimenezes suffered any
prejudice, we conclude that the Jimenezes failed to show People=s Choice waived its contractual right
to arbitration.

Unconscionability


In their response
to the motion, the Jimenezes also argued that the arbitration agreement was
unenforceable because it was procedurally and substantively unconscionable in
that it was a one-sided adhesion contract obtained with unequal bargaining
power, too costly, and provided that only the Jimenezes waived their rights to
resolution of disputes in court, but under the same agreement People=s Choice waived no such rights.  At the hearing, the Jimenezes specifically
argued that the agreement was unconscionable because the exceptions to
arbitrable disputes were all causes of action that a lender, not a borrower
would bring, despite language in the agreement that each party had the right to
take any of the actions listed in the exceptions provision.  The Jimenezes=
counsel also argued that having to go to Dallas to arbitrate would be Asignificantly more expensive@ for him and his clients.  In addition, their counsel asserted that
taking witnesses to either Houston or Dallas would be prohibitively expensive
for his clients.  With regard to
substantive unconscionability, the Jimenezes=
counsel also asserted that the other defendants would not be subject to
arbitration and therefore, the cause would still remain in the trial court.








Since People=s Choice carried its initial burden,
the burden then shifted to the Jimenezes to present evidence on its defense of
unconscionability.  See In re Oakwood
Mobile Homes, Inc., 987 S.W.2d at 573.  
Unconscionability involves two aspects: 
(1) procedural unconscionability, which refers to the circumstances
surrounding the adoption of the arbitration provision; and (2) substantive
unconscionability, which refers to the fairness of the arbitration provision
itself.  In re Halliburton Co., 80
S.W.3d at 571.  The burden of proving
unconscionability rests on the party seeking to invalidate the arbitration
agreement.  Id.; In re
FirstMerit Bank, N.A., 52 S.W.3d at 756.

The Jimenezes
claimed that the arbitration agreement was an adhesion contract that was
unconscionable because it was one-sided and obtained with unequal bargaining
power.  An adhesion contract is a
contract in which one party has absolutely no bargaining power or ability to
change the contract terms.  See In re
H.E. Butt Grocery Co., 17 S.W.3d 360, 370-71 (Tex.App.--Houston [14th
Dist.] 2000, orig. proceeding).  No
evidence was admitted to show the Jimenezes=
lack of bargaining power or inability to change the contract terms.  The agreement states, AIf
you have any questions, you should consult you own lawyer before you sign this
Agreement.@  However, this statement does not indicate
that the Jimenezes had equal bargaining power to change the terms of the
arbitration agreement or even an opportunity to negotiate its terms.  Even assuming that the agreement was an
adhesion contract, an adhesion contract is not automatically unconscionable or
void.  See In re Oakwood Mobile Homes,
Inc., 987 S.W.2d at 574; see also EZ Pawn Corp. v. Mancias, 934
S.W.2d 87, 90 ‑1 (Tex. 1996)(unequal bargaining power does not establish
grounds for defeating an agreement to arbitrate under the FAA).  Therefore, we will consider whether the
Jimenezes presented some other evidence of unconscionability.  See In re Oakwood Mobile Homes, Inc.,
987 S.W.2d at 574.








The Jimenezes
argued that the agreement was procedurally unconscionable because it was too
costly.  At the hearing, their counsel
stated that going to Dallas to arbitrate would be more expensive for his
clients and that taking witnesses they needed to call to Houston or Dallas
would also be prohibitively expensive. 
The Jimenezes introduced no witness testimony and no affidavits to
support their argument regarding the prohibitive costs of arbitration in this
case.  Moreover, there is no evidence to
show that the Jimenezes lacked the financial capability to pay the alleged
expensive arbitration costs.  Therefore, the
Jimenezes claim that arbitration would be too costly was not supported by any
evidence.

The Jimenezes
assert, however, that the trial court properly denied the motion to compel
arbitration based on substantively unconscionability.  The Jimenezes claim that under the terms of
the arbitration agreement, all the claims or controversies that would or could
arise in favor of People=s
Choice are claims that are exempted from arbitration, while all claims or
controversies that would or could be brought by them as borrowers must be
arbitrated.  Specifically, the Jimenezes
point to the following provision in the agreement:

Exceptions:  The following are not disputes subject to
this Agreement:  (1) any judicial or
non-judicial foreclosure proceeding against any real or personal property that
serves as collateral for the loan, whether by the exercise of any power of sale
under any deed of trust, mortgage, other security agreement or instrument or
under applicable law, (2) the exercise of any self-help remedies (including
repossession and setoff rights) and (3) provisional or ancillary remedies with
respect to the loan or any collateral for the loan such as injunctive relief,
sequestration, attachment, replevin or garnishment, the enforcement of any
assignment of rents provision in any loan documents, the obtaining of
possession of any real property collateral for the loan by an action for
unlawful retainer or the appointment of a receiver by a court having
jurisdiction.  This means that nothing in
this Agreement shall limit your right or our right to take any of these
actions.  The institution and/or
maintenance of any action or remedy described in this paragraph shall not
constitute a waiver of your right or our right to arbitrate any dispute subject
to this Agreement.

 








In essence, the Jimenezes are
arguing that arbitration agreement is constructed in such a way that it is
biased in favor of People=s
Choice because the actions designated under the AExceptions@ provision and thus, exempted from
arbitration, are in fact all creditor=s
remedies, not actions that a borrower could take against People=s Choice.  Thus, even though the agreement states that
both the Jimenezes and People=s
Choice have a right to pursue the designated judicial remedies in the
exceptions provision, in reality, only the Jimenezes=
rights to resolve their disputes in court are waived under the agreement
because they could never take advantage of the exceptions provision.

First, we observe
that the ADispute@ provision, which requires all
disputes, that is, all items not described in the AExceptions@ provision, be submitted to arbitration
applies equally to both parties.  The AExceptions@
provision, however, preserves People=s
Choice=s
judicial remedies as a creditor, namely, those remedies that seek only to
protect its security interest in the loan transaction.  In In re FirstMerit Bank, N.A., the
Texas Supreme Court considered a similar provision in an arbitration agreement
which allowed the lending bank to seek judicial relief to enforce its security
agreement, to recover the buyers=
monetary loan obligation, and to foreclose. 
In re FirstMerit Bank, N.A., 52 S.W.3d at 757.  The Court rejected the proposition that an
arbitration agreement requires mutuality of obligation because the principle of
unconscionability is one of preventing oppression and unfair surprise and not
of disturbing the allocation of risks because of superior bargaining power.  See id. 
The Court determined that the arbitration agreement was not conscionable
merely because it excepted claims that essentially protected the bank=s security interest.  See id. at 758.  In this regard, we find the arbitration
agreement in this case no different from the agreement at issue in In re
FirstMerit Bank, N.A..  Because
People=s Choice
only retained judicial remedies related to protecting its security interest, we
find that the arbitration agreement is not unconscionable on this asserted
ground.








Lastly, the
Jimenezes= counsel
argued at the hearing that the arbitration agreement was substantively
unconscionable because the other defendants would not be subject to arbitration
and thus, the cause would still remain in the trial court.  An arbitration agreement, however, must be
enforced despite the presence of other parties whose claims are not subject to
arbitration.  See Prudential‑Bache
Securities, Inc. v. Garza, 848 S.W.2d 803, 807 (Tex.App.‑-Corpus
Christi 1993, orig. proceeding).  We find
that the arbitration agreement was not unconscionable merely because the
Jimenezes must submit to arbitration while still continuing their lawsuit
against the remaining defendants. 
Because the Jimenezes failed to prove any defenses to avoid enforcement
of the arbitration agreement, we conclude that a valid arbitration agreement
exists between People=s
Choice and the Jimenezes and that agreement encompasses the claims asserted
against People=s
Choice.  Therefore, the trial court
clearly abused its discretion in denying the motion to abate and compel
arbitration.  Since People=s Choice has no adequate remedy by
appeal, mandamus relief is appropriate.  See
Tipps, 842 S.W.2d at 272‑73. 
Accordingly, we sustain all four issues raised by People=s Choice in its petition.

We conditionally
grant the petition for writ of mandamus and order the trial court to vacate its
December 3, 2004 order denying arbitration and to enter an order granting
People=s Choice=s motion to abate and compel
arbitration in accordance with this opinion. 
The writ will issue only if the trial court fails to do so.  We withdraw our December 30, 2004 order staying
all proceedings in the trial court.

 

August
23, 2005

DAVID WELLINGTON
CHEW, Justice

 

Before Barajas, C.J., McClure, and Chew, JJ.











[1]
People=s Choice
also filed an accelerated interlocutory appeal of the trial court=s denial of its motion to compel
arbitration in the event we determine that the arbitration agreement is
governed by the Texas General Arbitration Act rather than the Federal
Arbitration Act.  See Tex.Civ.Prac.&Rem.Code Ann. '' 171.001-.098 (Vernon 2005); 9
U.S.C.A. ''
1-16 (1999 & Supp. 2005); see also In re Valero Energy Corp., 968
S.W.2d 916, 916-17 (Tex. 1998)(orig. proceeding).  That appeal has been consolidated with this
mandamus proceeding and has been decided with an opinion issued this same
date.  See People=s Choice Home Loan, Inc. v. Maricela
Jimenez and Enrique Jimenez, No. 08-04-00374-CV (Tex.App.--El Paso, August
23, 2005, no pet. h.).