**MICHELIN TIRE CORPORATION**

v.

**Susie TODD.**

**Civ. No. Y–82–2566.**

United States District Court, D. Maryland.

Aug. 2, 1983.

George J. Bachrach, Baltimore, Md., for plaintiff.

H. Russell Smouse, Baltimore, Md., for defendant.

JOSEPH H. YOUNG, District Judge.

## MEMORANDUM OPINION AND ORDER

Defendant in the above action has petitioned for an order compelling arbitration, 9 U.S.C. § 4, and has moved for a stay of proceedings pending arbitration, 9 U.S.C. § 3. After careful consideration of the relevant authorities, the Court grants the petition and the motion. An explanation of the basis for this ruling follows.

Subject matter jurisdiction exists under 28 U.S.C. § 1332.[1] Plaintiff, a New York corporation with its principal place of business in New York, sues defendant, a Maryland domiciliary, on a continuing personal guaranty contract with an alleged present unpaid balance of $70,000.

Most of the relevant facts are undisputed. Defendant executed the personal guaranty to induce plaintiff to include Todd Transport Company, Inc., a trucking company operated by defendant's son in Secretary, Maryland, in plaintiff's "National Account Program." Under the terms of the National Account Program, Todd Transport Co. was entitled to acquire tires at any one of plaintiff's 3,500 independent dealers. Todd Transport would not pay the dealers for the tires it acquired; the dealer would forward a delivery receipt signed by Todd Transport to plaintiff's headquarters in New York and invoice Todd Transport directly from New York.[2] The National Account Program is attractive because volume customers pay plaintiff a lower price per tire than they would have to pay plaintiff's dealers for a standard retail purchase.

Following execution of defendant's personal guaranty contract, Todd Transport made three "purchases" of tires in Seaford, Delaware from plaintiff's dealer Kent Sussex Tire Company. Defendant claims that Todd Transport made these purchases as a collusive intermediary for Kent, which actually ended up with most of the tires. Kent allegedly "washed" its purchases through Todd Transport in order to obtain the previously described volume discount available to National Account members. Todd currently has an unpaid balance of $70,000 on the $140,000 allegedly involved in these transactions. As Todd Transport recently filed a petition for reorganization under Chapter 11 of the Bankruptcy Act of 1978, 11 U.S.C. §§ 1101–1174, plaintiff now looks to defendant for satisfaction of this $70,000 balance. Defendant does not appear to dis-

---

1. While the substantive law of the United States Arbitration Act will be applied in this action, it should be noted that the Arbitration Act does not itself supply an independent basis for federal subject matter jurisdiction. *Moses H. Cone Memorial Hospital v. Mercury Con-* *struction Corp.,* —— U.S. ——, —— n. 32, 103 S.Ct. 927, 942 n. 32, 74 L.Ed.2d 765 (1983).

2. Plaintiff would credit the dealer's account for the amount of tires the dealer delivered to Todd Transport and pay the dealer a sales commission.

pute that $70,000 remains outstanding on Todd Transport's National Account, but argues that the terms of her guaranty contract should be construed to cover only the "legitimate business activities" of Todd Transport. Defendant asserts that she was unaware of the alleged *sub rosa* Todd Transport-Kent transactions and that her guaranty should not be construed to include such "extra-curricular" and possibly "fraudulent" activities.

Paragraph 10 of the personal guaranty contract provides:

> 10. ARBITRATION. Should any dispute arise pursuant to the terms of this agreement, it is agreed that said dispute shall be submitted to arbitration pursuant to the rules of the American Arbitration Association then existing in the City of New York.

Despite this express provision of its own standard form contract, plaintiff filed the present action on August 30, 1982 to recover the allegedly unpaid $70,000. After defendant's October answer, plaintiff moved for summary judgment in December. The Court reviewed the various summary judgment submissions and wrote to counsel requesting additional briefing on certain matters. One of the matters the Court inquired into was the effect of the arbitration clause upon the present suit. Defendant thereafter moved on June 8, 1983, for a stay pending arbitration and on June 28, 1983, for an order compelling arbitration. No formal discovery has occurred in this action; defendant has expressly indicated that she is willing to arbitrate whenever and wherever the Court orders her to.

█ The "threshold" inquiry is whether the current action is governed by the United States Arbitration Act, 9 U.S.C. §§ 1–14. *See Bernhardt v. Polygraphic Co.,* 350 U.S. 198, 200, 76 S.Ct. 273, 274, 100 L.Ed. 199 (1956). The Arbitration Act creates a "federal substantive law of arbitrability" which must be applied under the Supremacy Clause by all courts, state or federal, to any arbitration agreement within its coverage. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* —— U.S. ——, ——,

103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). The Act governs arbitration clauses in contracts evidencing a transaction in "commerce" as defined in § 1 of the Act. *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.,* 388 U.S. 395, 401–02, 87 S.Ct. 1801, 1804–05, 18 L.Ed.2d 1270 (1966); *Bernhardt,* 350 U.S. at 200–02, 76 S.Ct. at 274–75; *American Home Assurance Co. v. Vecco Concrete Construction Co., Inc. of Virginia,* 629 F.2d 961, 963 (4th Cir.1980). § 1 provides in relevant part:

> . . . "commerce," as herein defined, means commerce among the several States or with foreign nations . . .

9 U.S.C. § 1. The Supreme Court has expressly rejected a narrow construction of "commerce" as used in § 1. *Prima Paint,* 388 U.S. at 401–02 n. 7, 87 S.Ct. at 1804–05 n. 7.

█ The present contract manifestly involves "commerce among the several states." The contract itself is between a Maryland guarantor and a New York obligee; if performed, it would involve the payment of money from Maryland to New York. In addition, the underlying transaction which the guarantee was executed to facilitate allowed Todd Transport to acquire tires from any of 3,500 nationwide dealers and provided for direct payment through plaintiff's national headquarters in New York. As matters turned out, Todd Transport Co. in fact crossed state lines to acquire its tires from Kent Sussex. The Supreme Court has specifically approved determining whether an individual contract involves "commerce" by examining the contract in light of the entire transaction to which it relates. *Prima Paint,* 388 U.S. at 401, 87 S.Ct. at 1804. Whether viewed individually or in the context of the entire Todd Transport transaction, the instant contract involves "commerce" as that statutory phrase has been applied. *See, e.g., American Home Assurance,* 629 F.2d at 961.

The relevant substantive provisions of the United States Arbitration Act dictates that the current action should be stayed and that arbitration should be compelled. 9 U.S.C. § 3 provides:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

The parties have not disputed that there is a written agreement for arbitration and that the present issue is referable under the broad language of the arbitration clause. After careful review of the proceedings in this litigation, the Court also concludes that defendant has not been in "default" as that term is used in § 3. The Fourth Circuit sitting *en banc* has recently commented at some length on the existence of a § 3 default:

Section 3, it is true, would deny the right to a stay of proceedings in favor of arbitration if it can be said that the applicant for the stay is "in default in proceeding with such arbitration." It is often likened to waiver or laches or estoppel, but these terms are used not in their traditional sense but are to be given a definition and application in line with the statutory purposes and preferences reflected in the Act. But "default" in this sense is not to be lightly inferred in view of the statutory favor for arbitration. Thus, mere delay in making an arbitration demand is not a default within the meaning of Section 3 . . . it is only when this delay results in actual prejudice that it may amount to "default" within the Act. These are two situations and only two situations in which such prejudice, under the federal decisions, may rise to the level of "default" under the Act and these situations are generally described under the general classification of "waiver." . . .

The first type of waiver qualifying as a "default" occurs "when a party 'actively participates in a lawsuit or takes other action inconsistent with' the right to arbitration." In *Chatham Shipping Co. v. Fertex Steamship Corp.,* 352 F.2d 291, 293 (2d Cir.1965), Judge Friendly stated that "the earliest point at which such preclusion [*i.e.,* waiver as used in this sense] may be found [in the arbitration case] is when the other party files an answer on the merits." This does not mean, though, that the filing of such an answer will always amount to a waiver. In *Carolina Throwing Co. v. S & E Novelty Corp.,* 442 F.2d 329, 330 (4th Cir.1971), we said that "a default [within the Act] does not automatically result from a delay or from the filing of responsive pleadings." And it is clear that the removal of a state action is not to be deemed as "default" or "waiver" in this sense. It is only the "[s]ubstantially invoking the litigation machinery [which will] qualif[y] as the kind of prejudice . . . that is the essence of waiver" in this context. And whether there is "default" or "waiver" in this sense is a question solely for the court itself to resolve.

The second type of "default" or "waiver" identified in *N & D Fashions* [548 F.Supp. 722 (8th Cir.1977) ], *supra,* "applies to bar arbitration when the process would be inequitable to one party because relevant evidence has been lost due to the delay of the other." . . . [separate citation sentences omitted].

*In Re Mercury Construction Corp.,* 656 F.2d 933, 939–40 (4th Cir.1981), *aff'd sub nom. Cone Memorial Hospital,* —— U.S. ——, 103 S.Ct. 927, 74 L.Ed.2d 765.

In the present action, defendant has answered and has responded to plaintiff's motion for summary judgment, but has not had the advantage of any formal discovery. While the summary judgment motion perhaps served to clarify the issues in this litigation, both sides have had the benefit of this clarification. Plaintiff has not been unilaterally "prejudiced" in the sense that it might have been had defendant availed itself of the extensive discovery available un-

der the Federal Rules of Civil Procedure and then attempted to utilize the discovered information it had gained in an informal arbitration which ordinarily would not have provided for similarly extensive discovery. *See Carcich v. Rederi A/B Nordie,* 389 F.2d 692, 696 (2nd Cir.1968) (Kaufman, J.). The Court follows the many authorities that indicate that limited participation in the initial stage of a lawsuit does not constitute a § 3 default and holds that a stay must issue in the present action.[3] *See, e.g., Hilti, Inc. v. Oldach,* 392 F.2d 368 (1st Cir.1968); *Carcich v. Rederi A/B Nordie,* 389 F.2d at 692 (maritime transaction necessarily invoking United States Arbitration Act); *see J & S Construction Co., Inc. v. Travellers Indemnity Co.,* 520 F.2d 809 (1st Cir.1975) (per curiam) (unclear whether decided under United States Arbitration Act). This ruling is particularly appropriate in light of the Supreme Court's recent admonition that:

> The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

*Cone Memorial Hospital,* —— U.S. at ——, 103 S.Ct. at 941.

The strong language of *Cone* also supports the issuance of an order compelling

arbitration. 9 U.S.C. § 4 provides in relevant part:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration, may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement ... upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. *The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed.* [emphasis added].[4]

In the present case, an arbitration agreement has been made and plaintiff has "failed" or "neglected" to comply with it by filing the present action on an issue squarely within the scope of the arbitration clause. *See Mercury Construction Corp.,* 656 F.2d at 939.[5] The Court therefore orders arbitration of the present action within the District of Maryland as dictated by § 4. The arbitration proceedings shall be governed by the rules of the American Arbitra-

---

**3.** As plaintiff has made no allegations of lost evidence, the second form of waiver discussed by *Mercury Construction* does not exist. In any event, this second form of waiver is a matter for the arbitrator and not for the Court. *Mercury Construction,* 656 F.2d at 940.

**4.** As the instant petition has arisen in the midst of an ongoing litigation, the Court need not strictly follow the various procedural details which § 4 requires for a petition which *commences* litigation. In particular, no trial is necessary. Both parties concede the existence of the arbitration clause, and plaintiff's filing of the present action constitutes a plain act of neglect. Despite multiple opportunities to communicate with the Court on the subject of arbitration, plaintiff has never attempted to explain why it ignored the arbitration clause its own form contract provided. The Court is sat-

isfied from the extensive briefing that has been submitted that the making of the agreement and the failure or neglect of plaintiff to comply with it are not in issue. *See Atlantic Shipping Corp. v. Cheswick-Flanders & Co.,* 463 F.Supp. 614 (S.D.N.Y.1978) (party must unequivocally deny agreement to create genuine issue for trial).

**5.** Plaintiff complains that defendant has made no formal demand for arbitration and therefore should be precluded from seeking arbitration now. The Seventh Circuit has held, in a case heavily relied upon by the Fourth Circuit in *Mercury Construction,* that this precise issue "is within the province of the arbitrator" and not the Court. *N & D Fashions, Inc. v. DHJ Industries, Inc.,* 548 F.2d 722, 729 (8th Cir. 1977).

tion Association then existing in the City of New York, in accordance with parties' contract.

For the foregoing reasons, it is this 2nd day of August, 1983, by the United States District Court for the District of Maryland, ORDERED:

1. That defendant's motion for a stay of the action pending arbitration BE, and the same IS, hereby GRANTED;

2. That defendant's petition for an order compelling arbitration BE, and the same IS, hereby GRANTED;

3. That the parties proceed to arbitration within the District of Maryland;

4. That this action be closed statistically, with the right to all parties to reopen the case at the conclusion of all arbitration proceedings; and

5. That a copy of this Memorandum and Order be mailed to the parties.