PEPE INTERNATIONAL DEVELOP-
MENT COMPANY, William M. Chap-
pelle, Kevin R. Moffett and Pepe Inter-
national, Inc., Appellants,

v.

The PUB BREWING COMPANY,
Appellee.

PEPE INTERNATIONAL DEVELOP-
MENT COMPANY; William M. Chap-
pelle; Kevin R. Moffett; and Pepe Inter-
national, Inc.; Relators

v.

The Honorable Carolyn GARCIA, Judge
of the 151st District Court of Harris
County, Respondent.

Nos. 01–95–00695–CV, 01–95–00832–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 29, 1996.

James J. Sentner, Jr., Charles A. Hammaker, Erik G. Heymann, Houston, for appellants.

Hugh L. McKenney, Joel Lee–Eric Jesse, Houston, for appellee.

Before OLIVER–PARROTT, C.J., and MIRABAL and WILSON, JJ.

## OPINION

OLIVER–PARROTT, Chief Justice.

Appellants, Pepe International Development Company (PIDCO), William M. Chappelle, Kevin R. Moffett and Pepe International, Inc., appeal the order of the trial court denying appellants' motion to compel arbitration and stay of action pending arbitration pursuant to the Texas General Arbitration Act [1] (Texas Act); additionally, pursuant to the Federal Arbitration Act [2] (Federal Act), appellants challenge the order of the trial court by way of a mandamus proceeding. We consider the appeal and the mandamus proceeding together.

Appellants argue that the trial court erred in denying appellants' motion to compel arbitration and stay of action pending arbitration because there is no evidence that: (1) the contracts made the basis of the dispute did not contain valid arbitration clauses; (2) the contracts made the basis of the suit did not

---

**1.** TEX.CIV.PRAC. & REM.CODE ANN. §§ 171.001–.023 (Vernon Supp.1996).

**2.** 9 U.S.C. §§ 1–16 (1995).

fall under the arbitration provisions of the contracts; (3) appellants waived their right to arbitrate; (4) appellants' cancellation of the contracts invalidated the arbitration clause of the contracts; or (5) the presence of defendants not parties to the contracts bars arbitration of disputes that arise out of the contracts.

### Facts and Procedural History

On March 24, 1993, appellant, PIDCO, and appellee, Pub, entered into two contracts wherein it was agreed that Pub would sell goods and provide services to PIDCO related to the construction of breweries in the Republic of Kazakhstan. These contracts were signed by Moffett and Chappelle in their representative capacities as secretary and president of PIDCO, respectively. Contained within the contracts were arbitration clauses in which each party agreed to binding arbitration if any disagreement related to the contracts were to come about.[3]

On July 22, 1994, PIDCO cancelled the balance of the contracts pursuant to clause 7.02 of the contracts.[4] In a letter from Robert Burnett, Vice President of Operations for PIDCO, to Ralph Eibert, Vice President of Pub, Burnett referred to statements made at a recent meeting between the parties. The letter asserts that Pub was informed that it had failed to meet several obligations under the contract and that Pub owed PIDCO approximately $500,000, which included penalties under section 7.02 of the contracts. Burnett noted it was his understanding that Pub was of the opinion that no sums were due

under penalty and that Pub did not intend to complete the contracts as long as PIDCO continued to claim amounts due under section 7.02 of the contract. This position was later reiterated by Pub's counsel, Mr. Walton Bader.

Burnett concluded his letter by stating it was PIDCO's position that Pub was in material breach of the contracts and by its actions Pub anticipatorially repudiated the contract. Due to this repudiation, Burnett noted that PIDCO would cancel the remainder of the contract, pursuant to clause 7.02, for delays in delivery exceeding four months, and PIDCO would retain its right to pursue all remedies for Pub's breach of contract.

On August 15, 1994, Pub initiated this action by filing its original petition. On September 16, 1994, PIDCO made a written demand for arbitration upon Pub. On September 19, 1994, PIDCO and its codefendants filed an answer and counterclaim to Pub's original petition alleging breach of contract on the part of Pub. PIDCO filed a formal demand for arbitration with the trial court on November 10, 1994. An oral hearing was held on February 9, 1995, on the matter. On June 23, 1995, the district court entered an order denying PIDCO's demand for arbitration.

Challenging the trial court's denial of its motion to compel arbitration, appellants PIDCO, Moffett, Chappelle and Pepe International, Inc., filed this interlocutory appeal pursuant to the Texas Act along with a mandamus proceeding, pursuant to the Federal Act.

---

**3.** The contracts contained the following language:

> Any controversy or claim arising out of and/or related to this contract, or the breach thereof, shall be settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

**4.** Clause 7.02 in the contracts provided:

> *Penalties for Untimely Delivery.* If the seller fails to deliver any completed unit of the goods according to the delivery schedule at exhibit

5.02 then the seller agrees to discount the total price for any completed unit of the goods which buyer is required to pay by one-half of one (0.5%) percent per week of seven (7) calendar days of delay for the first four (4) weeks or any part of a week following the scheduled delivery time at exhibit 5.02 and one (1%) percent per week of seven (7) calendar days of delay for the next eight (8) weeks, or any part thereof, with the maximum delay penalty constituting no more than a ten (10) percent discount of the total price. If the delay in delivery exceeds four (4) months, buyer may cancel the contract completely or partially without compensation to seller for expenses or losses caused by cancellation of the contract.

The trial court did not specify in its judgment whether state or federal arbitration laws applied to the contract in question here. Therefore, this Court must decide at the outset whether the Federal or State Act governs this dispute. The parties acknowledged within the contracts that the goods and services contracted for bear a relationship to the State of Texas and agreed to allow Texas law to govern the parties' rights and duties under the contracts.[5] Further, both parties assert in their briefs that Texas law should govern this dispute; however, appellants also argue that if federal law were to apply, appellants would still be entitled to arbitration.

The United States Supreme Court has held that when parties to a contract agree to abide by the arbitration rules of a certain state, the courts should honor that choice and give effect to the contractual rights and expectations of the parties. *Volt Information Sciences, Inc. v. Board of Trustees*, 489 U.S. 468, 479, 109 S.Ct. 1248, 1256, 103 L.Ed.2d 488 (1989); *American Physicians Serv. Group, Inc. v. Port Lavaca Clinic Assocs.*, 843 S.W.2d 675, 677–78 (Tex. App.—Corpus Christi 1992, writ denied).

Based upon the terms of the parties' contracts and the relevant case law, we find that the provisions of the Texas Arbitration Act govern this dispute and deny appellants any relief by way of a mandamus.

### Point of Error One

In their first point of error, appellants argue that the trial court erred in denying appellants' motion to compel arbitration because there is no evidence that the contracts made the basis of the dispute did not contain valid arbitration clauses.

In an appeal from an interlocutory order denying a motion to compel arbitration, the applicable standard of review is that of "no evidence." *Wetzel v. Sullivan, King & Sabom, P.C.*, 745 S.W.2d 78, 79 (Tex.App.— Houston [1st Dist.] 1988, no writ). Under the "no evidence" standard, the appellate court considers only the evidence and inferences tending to support the finding under attack and disregards all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965).

In this case, the trial court did not provide this Court with findings of fact and conclusions of law; thus, we must affirm the decision of the trial court if there is sufficient evidence to support it upon any legal theory asserted. *Wetzel*, 745 S.W.2d at 81.

On application of a party that shows a valid agreement to arbitrate, the trial court should order the parties to proceed with arbitration unless the opposing party denies the existence of the agreement, and the trial court summarily finds for the party opposing arbitration. TEX.CIV.PRAC. & REM.CODE ANN. § 171.002 (Vernon Supp. 1996). If the court finds the arbitration provision valid, it shall order arbitration. *Gulf Interstate Eng'g Co. v. Pecos Pipeline & Producing Co.*, 680 S.W.2d 879, 881 (Tex. App.—Houston [1st Dist.] 1984, writ dism'd). Once a trial court determines that a valid agreement to arbitrate exists and that the claim raised falls within the scope of that agreement, it has no discretion but to compel arbitration and stay its proceedings pending arbitration. *Prudential Securities, Inc. v. Banales*, 860 S.W.2d 594, 597 (Tex.App.— Corpus Christi 1993, no writ).

The record reflects, and neither party disputes, that two contracts were entered into on March 24, 1993, which contained the above-noted arbitration clauses. Appellants argue that there is no evidence which disputes the validity of these arbitration clauses. Pub contends that though arbitration clauses are present in the contracts, it would be unconscionable to compel arbitration due to

---

5. Clause 6.02 of the contracts specifically stated: *6.02 Governing Arbitration Law.* In rendering the award, the arbitrator shall determine the rights and obligations of the parties according to the substantive and procedural laws of the State of Texas.

PIDCO's failure to disclose to Pub its under-capitalization at the time the contract was entered into, Moffett and Chappelle's alleged use of PIDCO as their "alter ego," the alleged transfer to another corporation of all of the benefits of the contracts involved, and PIDCO's failure to obtain proper letters of credit from the Arab American Bank.

Pub cites section 171.001 of the Texas Arbitration Act in support of its unconscionability argument. The portion of the act it relies upon provides: "a court shall refuse to enforce an agreement or contract provision to submit a controversy to arbitration if the court finds [the provision] was unconscionable at the time the agreement or contract was made." Specifically, Pub argues that because the contract itself was entered into based upon PIDCO's alleged misrepresentations, a provision contained within the contract—the agreement to arbitrate—is non-enforceable as a result of the application of section 171.001.

▆▆▆ Pub cites no case law to support this interpretation of the Act. The Act states that the court shall not compel arbitration if it finds that *the arbitration provision* was unconscionable at the time the contract was entered into. Therefore, a contract containing an agreement to arbitrate disputes "arising out of and/or related to the contract" is subject to arbitration, notwithstanding a party's assertion that the contract itself is "unconscionable."

▆▆▆ Allegations of fraud in the inducement of the underlying contract are matters for the arbitrator to decide, whereas fraud concerning the inducement of an arbitration clause in a contract must be decided by the trial court. *New Process Steel Corp. v. Titan Indus. Corp.*, 555 F.Supp. 1018, 1022 (S.D.Tex.1983).

No evidence exists in the record to support a finding that the arbitration clauses within the contracts are not valid. We sustain appellants' first point of error.

### Points of Error Two and Five

Appellants argue in their second and fifth points of error that there is no evidence that the dispute made the basis of the suit does not fall under the arbitration provisions of the contracts, and there is no evidence that the existence of defendants not parties to the contracts bars arbitration of disputes that arise out of the contracts.

Pub argues that there are parties involved in this underlying action that are not subject to the provisions of the contract. Specifically, Pub contends that only appellant PIDCO and Pub are parties to the contracts involved, and any matter resolved through arbitration would not be enforceable against appellants Moffett, Chappelle and Pepe International, Inc.

▆▆▆ Once it is determined that an arbitration provision exists, the reviewing court must determine the scope of the agreement. *Belmont Constructors v. Lyondell Petrochemical Co.*, 896 S.W.2d 352, 356–57 (Tex.App.—Houston [1st Dist.] 1995, n.w.h.). A clause requiring arbitration is interpreted under contract principles and the language contained within will be enforced according to its plain meaning, unless this would defeat the intention of the parties. *Id.* The arbitration clauses contained within the contracts at issue here are "broad form" in nature, which evidences the parties' intent to be inclusive, rather than exclusive. *Beckham v. William Bayley Co.*, 655 F.Supp. 288, 290 (N.D.Tex.1987). Also, there is a strong presumption in Texas public policy favoring arbitration. *Houston Lighting & Power Co. v. San Antonio*, 896 S.W.2d 366, 370 (Tex. App.—Houston [1st Dist.] 1995, n.w.h.).

In its original petition, Pub alleged that PIDCO failed to perform as required under the terms of the contracts. Pub also alleged that PIDCO was the "alter ego" of Pepe International, Inc., Moffett and Chappelle, and that the corporate form was used to perpetrate fraud upon Pub. Pub further claimed a tortious interference with contract on the part of Moffett and Chappelle. However, the only evidence in the record to support these claims was the affidavit of Ralph Eibert, who made these assertions (alter ego and fraud) based upon investigation and personal belief.

The causes of action made the basis of the lawsuit between Pub and PIDCO, specifically the breach of contract claims, clearly fall within the scope of the arbitration clauses within the contracts as these claims arise out of and/or relate to the contract. The individual claims against Moffett, Chappelle and Pepe International, Inc., on the other hand, fall outside the scope of the arbitration clauses. These parties were not signatories to the contracts and are therefore not subject to the contracts' provisions. *Prudential–Bache Securities, Inc. v. Garza*, 848 S.W.2d 803, 806–807 (Tex.App.—Corpus Christi 1993, orig. proceeding). Arbitration is a creature of contract; thus, when a party seeks to compel arbitration, he must first establish his right to that remedy under contract. *Alamo v. Garcia*, 878 S.W.2d 664, 665 (Tex.App.—Corpus Christi 1994, no writ). Here, Moffett, Chappelle and Pepe International, Inc., were not parties to the underlying contract between Pub and PIDCO, and therefore have no right to arbitration of the claims against them under the contract.

The presence of Moffett, Chappelle and Pepe International, Inc., as parties to the lawsuit, does not defeat the right of PIDCO to have claims against it arbitrated. *Garza* 848 S.W.2d at 807.

There is no evidence in the record to support a finding that the causes of action asserted by Pub against PIDCO do not arise out of and/or relate to the contract. There is, however, evidence in the record to support a finding that the individually named defendants and Pepe International, Inc., were not parties to the contract and thus may not compel arbitration under the terms of the contracts. We sustain appellants' second and fifth points of error insofar as claims against PIDCO.

### Point of Error Three

In their third point of error, appellants contend there is no evidence that appellants waived their right to arbitration. It is Pub's position that by submitting a demand letter to Pub for amounts due under the contract, by answering Pub's original petition and by counterclaiming in the suit, appellants substantially invoked the judicial process and thereby waived their right to arbitration.

Waiver will be found only where a party seeking arbitration has substantially invoked the judicial process to the detriment of the other party. *Central Nat'l Ins. Co. v. Lerner*, 856 S.W.2d 492, 494 (Tex.App.—Houston [1st Dist.] 1988, orig. proceeding). Waiver results when the party opposing arbitration suffers actual prejudice from the acts of the party seeking arbitration. *USX Corp. v. West*, 759 S.W.2d 764, 767 (Tex.App.—Houston [1st Dist.] 1988, orig. proceeding). The question of waiver depends on the individual circumstances of each case. *Valero Refining, Inc. v. M/T Lauberhorn*, 813 F.2d 60, 65 (5th Cir.1987).

A delay in making a demand for arbitration does not constitute a waiver when there is no actual prejudice to the party opposing arbitration. *Michelin Tire Corp. v. Todd*, 568 F.Supp. 622, 625–26 (D.C.Md. 1983); *citing In Re Mercury Constr. Corp.*, 656 F.2d 933, 939–940 (4th Cir.1981), *aff'd sub nom. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765. Waiver did not result when a party seeking arbitration waited eight months before moving for arbitration, had already filed its answer, interrogatories, requests for production, had moved for a protective order and had agreed to a joint motion for continuance. *Tenneco Resins, Inc. v. Davy Int'l*, 770 F.2d 416 (5th Cir.1985).

The record reflects that on September 16, 1994, attorneys representing PIDCO sent Pub a letter demanding arbitration of the dispute. On September 19, 1994, appellants filed their answer and counter-claim to Pub's claims.

Pub has failed to show that it in any way was prejudiced by appellants' actions in submitting a demand letter, answering Pub's original petition and counterclaiming in the

suit. It has, therefore, failed to show any injury as a result of the actions of appellants. In light of these facts, the policy favoring enforcement of arbitration agreements and the strong presumption against a finding of waiver, the evidence does not support a finding that PIDCO waived its right to arbitration. We sustain point of error three.

### Point of Error Four

In their fourth point of error, appellants argue that there was no evidence that PIDCO's cancellation of the contracts invalidated the arbitration clauses in the contracts. Pub argues that by cancelling the remaining portions of the contracts, PIDCO, in effect, cancelled the arbitration agreements contained within them.

Section 224 of the Texas Act provides:

A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract.

Federal courts construing identical language from the Federal Act have concluded that the agreement to arbitrate is separable from the entire contract. *Miller v. Puritan Fashions Corp.*, 516 S.W.2d 234, 238 (Tex.App.—Waco 1974, writ ref. n.r.e.).

As discussed above, the arbitration agreements contained within the contracts are valid. Therefore, under Article 224 of the Texas Act, the arbitration agreements are also enforceable and irrevocable in spite of the attacks made upon the contract as a whole. *Id.*

We sustain appellants' fourth point of error.

We reverse the judgment of the trial court as to PIDCO and remand for further proceedings consistent with this opinion. We affirm the judgment as to appellants Chappelle, Moffett and Pepe International, Inc.