**In re Donna ROLLAND.**

**No. 03–01–00375–CV.**

Court of Appeals of Texas, Austin.

Dec. 13, 2001.

Robert M. Smith, Mullen, Shivers & Smith, San Antonio, for Potter.

Jennifer S. Riggs, Melissa L. Harvey, Hill Gilstrap Riggs Adams & Graham, LLP, Austin, for relator.

Sean E. Breen, Herman Howry & Breen, LLP, Austin, for Wheaton.

Before Justices KIDD, YEAKEL and PATTERSON.

LEE YEAKEL, Justice.

 Relator Donna Rolland filed a petition for writ of mandamus, complaining of the county court at law's order granting a motion to compel arbitration filed by defendants and real parties in interest Wheaton Van Lines, Inc. and Potter Warehouse & Transfer Co.[1] We will grant Rolland's petition in part.

In 1981, Rolland moved from Michigan to Texas. She contracted with Livernois Moving & Storage to store her property, mostly furniture, in Michigan. Rolland alleges that her property was in excellent condition when initially stored. Livernois ceased business in 1989. Upon Livernois' recommendation, Rolland agreed to transfer her storage account from Livernois to defendant Potter Warehouse & Transfer Co. In 1997, Rolland decided to have her

---

1. Wheaton and Potter argue initially that this Court lacks jurisdiction over this matter because it is an attempted interlocutory appeal that does not fall within the statute allowing for such appeals and because Rolland has not shown that she lacks an adequate remedy by appeal. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 51.014, 171.098 (West Supp.2001). However, mandamus is an appropriate remedy for a party who is compelled to arbitrate without having agreed to do so. *See Freis v. Canales,* 877 S.W.2d 283, 284 (Tex.1994); *In re Godt,* 28 S.W.3d 732, 738 (Tex.App.—Corpus Christi 2000, no pet.). We have jurisdiction to consider Rolland's complaints.

property shipped to Texas, and Potter recommended defendant Wheaton Van Lines, Inc. for the move. Rolland agreed and hired Wheaton in April 1997, purchasing insurance through Wheaton. When her property arrived, Rolland discovered the property was dank and some items were mildewed, damaged, or missing.

Rolland sued Potter and Wheaton, alleging that (1) they had been negligent in their handling of her property and in failing to notify her that her property had been damaged, (2) they breached their contracts with Rolland and their implied warranties that they would properly store and deliver her property, (3) they breached the Deceptive Trade Practices Act,[2] (4) they breached the Insurance Code,[3] and (5) Wheaton was liable under the Carmack Amendment.[4] Wheaton and Potter both filed motions to compel arbitration, relying on an arbitration clause in the 1981 agreement between Rolland and Livernois.

The arbitration clause is found in the warehouse receipt between Rolland and Livernois that authorized Livernois to store Rolland's property. The clause reads:

> Any controversy or claim arising out of or relating to this contract, the breach thereof, or the goods affected thereby, whether such claims be found in tort or contract shall be settled by arbitration law of the Company's [Livernois] State and under the rules of the American Arbitration Association....

When Livernois ceased business in 1989, it sent a letter to Rolland regarding the transfer to Potter, which read in relevant part as follows:

> We are pleased to be able to advise you that we have made arrangements with a very reliable company to take over your storage account.
>
> They will keep the same storage rate that you are paying to Livernois at the present time for a reasonable time....
>
> All we will need is a letter from you advising us to release your storage account to Potter Warehouse and Transfer....
>
> The insurance you are carrying through Livernois will be carried by the same insurance company at the same rate, for a reasonable time.

Rolland responded, "I was delighted to know that arrangements have been made with Potter Warehouse and Transfer. This letter will serve as authorization for the transferring of my storage account (# 081192) and contents to Potter Warehouse and Transfer...."

In spite of Rolland's opposition, the county court at law granted Wheaton's and Potter's motions and stayed the litigation pending arbitration. Rolland seeks mandamus relief from the order, alleging that the court abused his discretion in ordering her to arbitration and that she has no adequate remedy by appeal.

**2.** Tex. Bus. & Com.Code Ann. §§ 17.41–.63 (West 1987 & Supp.2001).

**3.** Tex. Ins.Code Ann. § 21.21 (West 1981 & Supp.2001).

**4.** *See* 49 U.S.C.A. § 14706 (West 1997 & Supp.2001) (governing motor carrier's liability for property it transports); *see also Johnson & Johnson v. Chief Freight Lines Co.,* 679 F.2d 421, 421–22 (5th Cir.1982) (under Carmack Amendment shipper establishes *prima facie* case against carrier by showing delivery to carrier, receipt of fewer goods at destination, and damages; carrier is liable for loss unless it can show it was not negligent and damage was due to excepted cause). Rolland also relies on another section of the Carmack Amendment that governs the resolution of disputes between carriers and shippers, including provisions related to arbitration of such disputes. *See* 49 U.S.C.A. § 14708 (West 1997 & Supp.2001), discussed *infra* pp. 5–8.

## Standard of review in mandamus proceedings

■ We may grant mandamus relief to correct a trial court's clear abuse of discretion. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992). A trial court abuses its discretion if its decision is so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Id.* We give great deference to a trial court's determination of factual matters; our review of a court's determination of legal principles is much less deferential. *Id.* at 839–40. A clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. *Id.* at 840.

## Did Potter and Wheaton waive their rights to seek arbitration?

■ Rolland contends that both Potter and Wheaton waived their rights to seek arbitration because they did not request that the trial court compel arbitration until they had substantially availed themselves of the judicial forum. However, her argument regarding waiver is directed at Wheaton's activity in the trial court, where it answered, served discovery requests, moved to strike some of Rolland's pleadings, sought removal to federal court, and pursued a motion for summary judgment through a hearing.

■ A delay in demanding arbitration does not constitute waiver unless there is actual prejudice to the opposing party. *Pepe Int'l Dev. Co. v. Pub Brewing Co.*, 915 S.W.2d 925, 931 (Tex.App.—Houston [1st Dist.] 1996, no writ). Waiver is found only when the party seeking arbitration has substantially invoked the judicial process to the detriment of the opposing party. *In re Bruce Terminix Co.*, 988 S.W.2d 702, 704 (Tex.1998); *Pepe Int'l*, 915 S.W.2d at 931. Waiver depends on the individual circumstances of each case. *Pepe Int'l*, 915 S.W.2d at 931. The party opposing arbitration bears a heavy burden of proof to establish that the other party has waived its arbitration rights. *Bruce Terminix Co.*, 988 S.W.2d at 705. We resolve any doubt in favor of arbitration. *Id.*

Although Wheaton participated in the judicial process, it mounted an aggressive defense that did not go beyond a defensive posture. The motion for summary judgment and discovery requests sought only to remove Wheaton from Rolland's suit. Further, Rolland has not shown she has been prejudiced by Wheaton's delay in moving for arbitration. *Id.* at 704.

■ As for whether Potter waived its rights, Rolland points only to Wheaton's conduct in arguing waiver. She does not allege that Potter substantially availed itself of the judicial process and she does not point out actions by Potter that would show waiver. The record indicates only that Potter answered, served several basic discovery requests on Rolland, and joined Wheaton's motion to compel arbitration. Potter did not move for summary judgment, nor did it seek to remove the cause to federal court. Mere delay in requesting arbitration does not automatically constitute waiver. *Pepe Int'l*, 915 S.W.2d at 931. Rolland has not carried her substantial burden to show Wheaton or Potter waived its right to seek arbitration. *Bruce Terminix Co.*, 988 S.W.2d at 705.

## Can Wheaton rely on the arbitration clause?

Rolland contends the trial court erred in compelling her to arbitrate her claims because no enforceable arbitration agreement existed between her and Wheaton. She also contends that the alleged arbitration agreement was void under the Car-

mack Amendment.[5] *See* 49 U.S.C.A. § 14708 (West 1997 & Supp.2001). Wheaton argues that its relationship with Rolland was governed by the warehouse receipt.

■■■■■ Under very limited circumstances, courts have allowed a nonsignatory to a contract to enforce an arbitration clause. *See MS Dealer Serv. Corp. v. Franklin,* 177 F.3d 942, 947 (11th Cir. 1999); *Hoffman v. Deloitte & Touche, L.L.P.,* 143 F.Supp.2d 995,1004–05 (N.D.Ill.2001); *In re Keystone Shipping Co.,* 782 F.Supp. 28, 30–32 (S.D.N.Y.1992); *see also McCarthy v. Azure,* 22 F.3d 351, 362–63 (1st Cir.1994) (alter ego and third party beneficiary theories); *Arnold v. Arnold Corp.,* 920 F.2d 1269, 1281–82 (6th Cir.1990) (contract and agency theories). A nonsignatory may enforce an arbitration agreement when under agency or related principles, the relationship between signatory and nonsignatory defendants is such that only by allowing the nonsignatory to require arbitration may the underlying agreement be preserved. *See Hoffman,* 143 F.Supp.2d at 1004–05 (quoting *Franklin,* 177 F.3d at 947). If parties to a contract agree to confer certain contractual benefits on a third party, that third party may invoke the contract's arbitration clause. *Id.* at 1004. A nonsignatory may also compel arbitration if a signatory either must rely on a contract containing an arbitration clause in asserting its claims against the nonsignatory or alleges substantially interdependent misconduct by both a nonsignatory and one or more signatories. *Id.* at 1004–05. The *Keystone Shipping* court discussed four specific situ-ations in which a nonsignatory may enforce or be held to arbitration: (1) if the corporate veil is pierced, a nonsignatory may be required to arbitrate as the signatory's alter ego; (2) if a nonsignatory and a signatory are parties to a bill of lading expressly incorporating another contract's arbitration clause, the nonsignatory may enforce the clause; (3) a nonsignatory agent may be held by its conduct to have impliedly agreed to arbitrate; and (4) a nonsignatory may enforce an arbitration clause in a contract it signed on behalf of its principal. *See Keystone Shipping,* 782 F.Supp. at 30–32.

■■■■ None of these situations applies here to allow Wheaton to avail itself of the arbitration clause contained in the warehouse receipt between Rolland and Livernois, signed about 20 years earlier. Wheaton was not a party to the warehouse receipt, nor did it agree to assume any duties and benefits under it. In her pleadings, Rolland refers to an agent/principal relationship between Wheaton and Potter, a relationship Wheaton does not dispute and in fact seeks to rely upon in invoking the arbitration clause. However, it is clear from Rolland's pleadings that she is not suing Wheaton for damage that occurred while Potter stored her property. Wheaton may not rely on the warehouse receipt to compel arbitration of Rolland's claims. Rolland is not required to arbitrate her dispute with Wheaton.

### Can Potter rely on the arbitration clause?

Rolland likewise contends the county court at law erred in compelling her to

---

5. Wheaton contends that Rolland waived her claim that the arbitration clause is void under the Carmack Amendment by not adequately raising it before the trial court. However, Wheaton filed several pleadings urging that Rolland's state law claims were barred by the Carmack Amendment. Wheaton may not argue to the trial court that it is shielded by the amendment and then argue to this Court that Rolland may not also avail herself of the amendment. Further, the record includes Rolland's motion that the county court at law reconsider his ruling on the motion to arbitrate. In that motion, Rolland argued that the Carmack Amendment voided the arbitration agreement.

arbitrate her claims because no enforceable arbitration agreement existed between her and Potter. Rolland also contends that any alleged arbitration agreement was rendered void by the Carmack Amendment. Potter argues that its relationship with Rolland is governed by the warehouse receipt and that the Carmack Amendment does not apply to its relationship with Rolland.

 There is a strong presumption in favor of arbitrability and any doubts concerning the scope of arbitrable issues must be resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Pepe Int'l*, 915 S.W.2d at 930. However, no presumption of arbitrability arises unless the trial court finds an enforceable arbitration agreement. *In re Jebbia*, 26 S.W.3d 753, 757 (Tex.App.—Houston [14th Dist.] 2000, no pet.). Arbitration is a contract matter, and a party will not be required to arbitrate a dispute if she has not agreed to do so. *AT & T Techs., Inc. v. Communications Workers*, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)); *see Wasserstein v. Kovatch*, 261 N.J.Super. 277, 618 A.2d 886, 890 (1993), certif. denied, 133 N.J. 440, 627 A.2d 1145 (1993). Once an enforceable agreement to arbitrate is found, the presumption arises that all disputed issues between the parties must be arbitrated, and the court must compel arbitration. *Jebbia*, 26 S.W.3d at 757. The arbitrability of a claim depends on the relationship of the claim to the subject matter of the arbitration clause, not on the characterization of the claim. *In re Oil Spill by the Amoco Cadiz*, 659 F.2d 789, 794 (7th Cir.1981).

 The subject matter of Rolland's claims against Potter is the property she stored with Livernois that Livernois transferred to Potter's care. The arbitration clause in the warehouse receipt is very broad. Rolland consented to the transfer of her storage account from Livernois to Potter. Potter may insist on enforcement of the arbitration clause to the same extent as could Livernois insofar as Rolland's claims against Potter arise from the storage of her property.

### Conclusion

Wheaton may not rely on the warehouse receipt to compel Rolland to arbitrate her claims against it. Potter, as Livernois' assignee, assumed the responsibilities and benefits of the warehouse receipt and may rely on the arbitration clause to require Rolland to arbitrate her claims related to Potter's storage of her property. We conditionally grant in part the writ of mandamus with instructions for the county court at law to modify his April 30, 2001 order to require Rolland to arbitrate only her claims against Potter. The writ will issue only in the unlikely event that the county court at law does not modify his April 30 order consistent with this opinion.