Opinion issued April 24, 2003










In The
Court of Appeals
For The
First District of Texas




NO. 01-02-00913-CV




WILLIAMS INDUSTRIES, INC., Appellant

V.

EARTH DEVELOPMENT SYSTEMS CORP., Appellee




On Appeal from the 215th District Court
 Harris County, Texas
Trial Court Cause No. 2001-03961




O P I N I O N

          Appellant, Williams Industries, Inc. (“Williams”), takes this interlocutory
appeal from the denial of its application to compel arbitration and to stay proceedings. 
See Tex. Civ. Prac. & Rem. Code Ann. § 171.098(a)(1) (Vernon Supp. 2003)
(authorizing such interlocutory appeal). We determine (1) whether Williams showed
that the claims that it sought to arbitrate fell within the scope of two arbitration
agreements and (2) whether appellee, Earth Development Systems Corp. (“EDS”),
showed that Williams waived the right to arbitrate those claims. We reverse the
judgment and remand the cause with instructions.
Background
          Williams was the general contractor in separate jobs for the construction of a
Wal-Mart store (“the Wal-Mart job”) and an Albertsons grocery store (“the
Albertsons job”) in Texas. Williams subcontracted with EDS to assist in both jobs. 
Each subcontract contained an identical arbitration provision.
          Disputes arose from the construction jobs. On January 24, 2001, EDS sued
Williams, three of Williams’s employees at the Wal-Mart job, and three other
individuals or entities. EDS alleged that Williams had breached the Wal-Mart job
subcontract. EDS also alleged that Williams and its three employees had tortiously
interfered with EDS’s contract with another entity at that job. On June 27, 2001,
Williams filed a cross-petition against three co-defendants, seeking indemnity or
contribution from them. On January 10, 2002, EDS amended its petition to add two
more defendants, to expand its contract-breach claim against Williams to include the
Albertsons job subcontract, and to add a claim for fraud and negligent
misrepresentation against Williams and its three employees. On July 24, 2002, EDS
supplemented its petition to allege that Williams had fraudulently concealed the
existence of a surety and of two bonds issued by that surety and that Williams and the
surety had failed to execute one bond properly.



          On July 1, 2002—about one and one-half years after EDS had sued
Williams—Williams first moved to compel arbitration and to stay litigation.


 EDS
opposed Williams’s motion on three grounds: (1) not all of EDS’s claims fell under
the arbitration agreements, (2) Williams waived its right to seek arbitration, and (3)
Williams had not shown that the subcontract in the Albertsons job contained an
arbitration provision. EDS’s third ground was based on the fact that Williams had not
attached to its motion to compel the subcontract from the Albertsons job. 
Accordingly, when Williams tendered a copy of the Albertsons job’s subcontract at
the hearing, EDS abandoned the third ground.



          The trial court denied Williams’s motion to compel arbitration after having
held a brief hearing. The order recited that the ruling was based on waiver. No fact
findings and legal conclusions were filed. See Tex. R. App. P. 28.1.
Denial of Williams’s Motion to Compel Arbitration
          In its sole issue, Williams argues that the trial court erred in denying its motion
to compel arbitration.
A.      Burden of Proof and Standard of Review
          1.       The Parties’ Burdens
          “A party seeking to compel arbitration has the initial burden to establish the
arbitration agreement’s existence and to show that the claims asserted against it fall
within the arbitration agreement’s scope.” Mohamed v. Auto Nation USA Corp., 89
S.W.3d 830, 835 (Tex. App.—Houston [1st Dist.] 2002, no writ) (combined appeal
and orig. proceeding); see also Tex. Civ. Prac. & Rem. Code Ann. § 171.021(a)
(Vernon Supp. 2003). “If the party seeking arbitration carries its initial burden, the
burden then shifts to the party resisting arbitration to present evidence on its defenses
to the arbitration agreement.” Mohamed, 89 S.W.3d at 835 (citing In re Oakwood
Mobile Homes, Inc., 987 S.W.2d 571, 573 (Tex. 1999)).
          2.       The Defense of Waiver
          One defense is that the party seeking arbitration has waived its right to
arbitration.


 See, e.g., In re Oakwood Mobile Homes, 987 S.W.2d at 573 
(recognizing waiver as defense). Because public policy favors arbitration, there is a
strong presumption against finding that a party has waived its right to arbitration, and
the burden to prove waiver is thus a heavy one. In re Bruce Terminix Co., 988
S.W.2d 702, 704, 705 (Tex. 1998); EZ Pawn Corp. v. Mancias, 934 S.W.2d 87, 89
(Tex. 1996). Any doubts regarding waiver are resolved in favor of arbitration. In re
Bruce Terminix, 988 S.W.2d at 705. Waiver may be implied or express, but it must
be intentional. See Mancias, 934 S.W.2d at 89. Whether waiver occurs depends on
the individual facts and circumstances of each case. Pepe Int’l Dev. Co. v. Pub
Brewing Co., 915 S.W.2d 925, 931 (Tex. App.—Houston [1st Dist.] 1996, no writ)
(combined appeal and orig. proceeding); Merrill Lynch, Pierce, Fenner & Smith v.
Eddings, 838 S.W.2d 874, 879 (Tex. App.—Waco 1992, writ denied). Waiver will
be found only when (1) the party seeking arbitration has substantially invoked the
judicial process and (2) the party opposing arbitration suffers actual prejudice as a
result. Pepe Int’l Dev., 915 S.W.2d at 931; see In re Bruce Terminix, 988 S.W.2d at
704.
                    a.       Substantially Invoking the Judicial Process
          Substantially invoking the judicial process can occur when the proponent of
arbitration actively tried, but failed, to achieve a satisfactory result in litigation before
turning to arbitration. In re Winter Park Constr., Inc., 30 S.W.3d 576, 579 (Tex.
App.—Texarkana 2000, orig. proceeding). Examples include moving for summary
judgment or seeking a final resolution of the dispute. Id. Substantially invoking the
judicial process has also been described as taking specific and deliberate actions, after
the suit’s filing, that are inconsistent with the right to arbitrate. See Sedillo v.
Campbell, 5 S.W.3d 824, 827 (Tex. App.—Houston [14th Dist.] 1999, no pet.)
(combined appeal and orig. proceeding); Cent. Nat’l Ins. Co. of Omaha v. Lerner, 856
S.W.2d 492, 494 (Tex. App.—Houston [1st Dist.] 1993, orig. proceeding).
                    b.       Actual Prejudice
          The prejudice on which courts focus includes such things as (1) the movant’s
access to information that is not discoverable in arbitration


 and (2) the opponent’s
incurring costs and fees due to the movant’s actions or delay.


 Showing prejudice is
generally an evidentiary burden. See Pennzoil Co. v. Arnold Oil Co., 30 S.W.3d 494,
499-500 (Tex. App.—San Antonio 2000, no pet.) (combined appeal and orig.
proceeding) (“However, Arnold did not submit any evidence to the trial court in
support of its general allegations [of prejudice].”).



                    c.       Standard of Review of a Finding of Waiver
          Whether a party has waived its right to arbitrate is a question of law that we
review de novo. See In re Oakwood Mobile Homes, 987 S.W.2d at 574; accord In
re Serv. Corp. Int’l, 85 S.W.3d 171, 174 (Tex. 2002). Nonetheless, some courts have
held that the findings on which the legal determination of waiver is based (namely,
substantial invocation of the judicial process and prejudice) are subject to a different
standard of review because they are largely fact questions—although these courts
differ somewhat as to which standard of review applies.


 For reasons discussed
below, our resolution is the same regardless of which standard of review applies to
the determination of prejudice.
B.      Williams’s Initial Burden: Scope of the Arbitration Agreements



          In one sentence in its opposition to Williams’s motion to compel, EDS argued
that “not all Plaintiff’s claims are subject to arbitration.” EDS did not explain
whether the “claims” of which it spoke meant (1) those against Williams (and its three
employees) only or (2) those against other parties in the suit. Williams interprets
EDS’s ground to have meant the former; EDS claims that it meant the latter. We
agree with Williams. Read in context, Williams’s motion did not seek to compel
other parties to arbitrate anything. Given the limits of Williams’s motion to compel,
and given that EDS did not explain below what its argument meant, we construe
EDS’s argument to have concerned only its claims against Williams and its three
employees, i.e., that its tort claims against Williams and its employees did not fall
under the arbitration agreements. So construed, this was an argument that Williams
did not carry its initial burden to show that the claims that it sought to send to
arbitration fell within the arbitration agreements’ scope. See Mohamed, 89 S.W.3d
at 835. Williams disputes this contention.
          Because of the strong policy favoring arbitration, “[a]n order to arbitrate should
not be denied unless it can be said with positive assurance that the arbitration clause
is not susceptible of an interpretation that covers the asserted dispute.” Hou-Scape,
Inc. v. Lloyd, 945 S.W.2d 202, 205 (Tex. App.—Houston [1st Dist.] 1997, orig.
proceeding) (Federal Act). Thus, “[a]ny doubts concerning the scope of arbitrable
issues should be resolved in favor of arbitration.” Id.; see Valero Energy Corp. v.
Teco Pipeline Co., 2 S.W.3d 576, 590 (Tex. App.—Houston [14th Dist.] 1999, no
pet.) (TAA). In determining whether a claim falls within the scope of arbitration, we
focus on the facts alleged, not on the causes of action asserted. Hou-Scape, 945
S.W.2d at 205; Valero Energy, 2 S.W.3d at 590. We consider whether the alleged
facts “touch matters” covered by the underlying agreement of which the arbitration
agreement is a part. Hou-Scape, 945 S.W.2d at 205.
          We conclude that Williams carried this aspect of its initial burden. In support
of its motion to compel arbitration, Williams submitted the two subcontracts and their
arbitration clauses, and the trial court took judicial notice of the file, including EDS’s
petitions. The subcontracts, arbitration provisions, and petitions were sufficient
materials for the trial court to assess whether EDS’s claims against Williams were
subject to arbitration. See Menna v. Romero, 48 S.W.3d 247, 250 (Tex. App.—San
Antonio 2001, pet. dism’d w.o.j.) (holding that arbitration proponent carried burden
of showing that valid arbitration agreement existed and that claims fell within
agreement’s scope when proponent introduced agreement into evidence and when
trial court took judicial notice of agreement).
          The arbitration agreements provided that “[a]ll claims, disputes and other
matters in question arising out of or relating to the Subcontract, or the breach thereof,
may, at [Williams’s] sole option, be decided by litigation or arbitration.” This
language has been construed to be very broad. See Hou-Scape, 945 S.W.2d at 205-06
(citing cases); Pepe Int’l Dev. Co., 915 S.W.2d at 930. EDS does not dispute that its
contract-breach claims fell within the arbitration agreements’ broad scope. Rather,
EDS indicates that its tort claims did not. We disagree.
          For its tortious-interference claim, EDS alleged that
Williams interfered with [EDS’s] contract with DDS [another
subcontractor on the Wal-Mart job] by requiring [EDS] to use DDS for
certain work that [EDS] wished to perform itself, and by negotiating
with DDS to replace [EDS] while [EDS] was still on the job. . . .
Williams conspired to and did misrepresent DDS’ charges for work after
the wrongful termination [of EDS], which Williams has wrongfully
attempted to back charge to [EDS]. . . . [Williams’s three employees]
each participated in and caused this interference.

For its fraud and negligent misrepresentation claims, EDS alleged that Williams and
others misrepresented the state of EDS’s performance at the Wal-Mart job and that
Williams’s three employees each participated in that fraud. EDS’s remaining claims
against Williams concerned a payment bond for the Wal-Mart job and a bond filed
by Williams “to remove [EDS’s] mechanic’s lien affidavit as an encumbrance on the
Albertsons job.” Each of these extra-contractual claims arose out of, related to, or
“touch[ed] matters” covered by the two subcontracts and were thus covered by the
arbitration agreement. See Hou-Scape, 945 S.W.2d at 205. Therefore, we hold that
Williams carried its burden of showing that EDS’s claims against it fell within the
arbitration agreements’ scope.
          Because Williams carried its initial burden, the burden then shifted to EDS to
show that Williams had waived the right to compel arbitration. See In re Oakwood
Mobile Homes, 987 S.W.2d at 573.
C.       Waiver
          EDS’s primary argument below was that Williams had waived its right to
compel arbitration. The trial court’s order recited that Williams had waived
arbitration by substantially invoking the judicial process to EDS’s detriment.
          The parties filed unverified arbitration pleadings, attaching the Wal-Mart job
subcontract and arbitration agreement, Williams’s demand for a jury trial and letter
acknowledging payment of the jury fee, a schedule of arbitration fees from the
American Arbitration Association’s (“AAA”) Construction Industry Arbitration
Rules, and Williams’s second motion for continuance. No testimony was taken at the
hearing. The only material offered at the hearing was the Albertsons job subcontract;
it was never admitted into evidence, but EDS conceded that that subcontract
contained an arbitration clause identical to that in the other subcontract. Additionally,
based on the recitation in the order and the arguments of EDS’s counsel, it is clear
that the trial court took judicial notice of the record and of the materials offered at the
hearing and attached to the parties’ arbitration pleadings.
          The record reveals the following actions by Williams on which EDS relied to
argue that Williams had substantially invoked the judicial process and thus waived
its right to arbitrate:
●Williams answered EDS’s suit.
●About 17 months had passed before Williams moved to compel
arbitration, even though Williams had answered within a month
of suit’s filing.
 
●Williams engaged in written discovery.



 
●Williams filed a cross-petition seeking contribution or indemnity. 
Additionally, after Williams moved for arbitration, Williams’s
surety on two bonds (Hartford) counterclaimed against EDS.
 
●Williams demanded and paid the fee for a jury trial.
 
●Williams moved for continuance two or three times, in part
because it alleged that it needed more time for discovery, which
motions the trial court granted.
 
●Williams’s counsel filed their vacation letters about two months
before moving to compel arbitration.

          Even if the above actions substantially invoked the judicial process—a matter
that we need not decide—we hold that EDS did not carry its heavy burden of showing
that it was prejudiced by those actions. The trial court’s order did not recite on what
facts it found prejudice. However, EDS argued below that it was prejudiced because
●Williams engaged in “substantial discovery” and allowed other
co-defendants to do so, resulting in “multiple” requests for
disclosure, interrogatories, and requests for production, which
discovery was “expensive, protracted and costly . . . .”
 
●EDS would have opposed Williams’s continuance motions had it
known that Williams would seek arbitration.
 
●Williams’s delay in seeking arbitration would “substantially delay
the ultimate resolution of the parties’ dispute,” resulting in EDS’s
incurring attorney’s fees.
 
●EDS would have to pay arbitration fees.
 
●Williams received discovery that would not have been available
in arbitration.




These prejudice arguments can be summarized as EDS’s (1) incurring costs and fees
because of discovery, arbitration, and delay and (2) divulging information not
available to Williams in arbitration.


 
          Mere delay alone does not suffice to show prejudice. Pennzoil, 30 S.W.3d at
499 (noting that generalized protestations about costs of delay, without evidence in
support, are insufficient to show prejudice); see In re Rolland, 96 S.W.3d 339, 343
(Tex. App.—Austin 2001, orig. proceeding) (“Mere delay in requesting arbitration
does not automatically constitute waiver.”); In re Serv. Corp. Int’l, 85 S.W.3d at 174
(“[A] party does not waive a right to arbitration merely by delay; instead, the party
urging waiver must establish that any delay resulted in prejudice.”). The same is true
of arbitration expenses. EDS agreed to arbitrate these disputes. Therefore, the
payment of arbitration fees alone cannot constitute prejudice to EDS, absent a
showing, for example, that what EDS had already expended in the present suit
equaled or exceeded arbitration fees. Therefore, to show prejudice for the reasons
that EDS asserted below, EDS would have had to show how the delay, its fees and
costs, the volume of discovery, or the information that Williams obtained in discovery
had prejudiced EDS. EDS did not do so.
          For example, as for prejudice arising from discovery, the clerk’s record
contains no copies of discovery requests or responses, and no one introduced them
into evidence or described them at the hearing.


 Knowing the amount and content
of discovery is important in determining prejudice because “when only a minimal
amount of discovery has been conducted, which may also be useful for the purpose
of arbitration, the court should not ordinarily infer waiver based upon prejudice.” In
re Bruce Terminix, 988 S.W.2d at 704; see In re Nasr, 50 S.W.3d at 27 n.3 (noting
that mere fact that depositions were taken, when transcribed deposition testimony did
not appear in record and when opponents did not otherwise prove how they were
prejudiced, did not show prejudice). Knowing the content of written discovery is also
important here because the AAA Construction Industry Arbitration Rules, under
which the parties agreed to arbitrate, allow the arbitrator to direct “the production of
documents and other information” and “the identification of any witnesses to be
called”; require the parties to exchange copies of all exhibits; and allow the arbitrator
the discretion to order more discovery in “extraordinary cases when the demands of
justice require it.” American Arbitration Association, Construction
Industry Arbitration Rules, R-24(a), (b), (d), available at http://www.adr.org
(rules last amended eff. July 1, 2001). EDS did not explain or show whether what it
had revealed through discovery would differ from what it could produce at
arbitration. See Pennzoil Co., 30 S.W.3d at 500.


 Furthermore, nothing shows
whether EDS would have had to answer the other defendants’ discovery of which it
complains even had Williams removed itself from the suit early on through
arbitration.
          As for prejudice resulting from attorney’s fees and costs, nothing shows, for
example, what fees or costs EDS incurred; how much of those fees or costs were
attributable to Williams’s complained-of actions, as opposed to the actions of other
parties; or whether the fees or costs that EDS had already expended were for matters
that could not be used in arbitration. See Transwestern Pipeline Co. v. Horizon Oil
& Gas Co., 809 S.W.2d 589, 593 (Tex. App.—Dallas 1991, writ dism’d w.o.j.)
(“[T]he mere fact that [plaintiff] has expended funds for legal fees is insufficient to
establish prejudice. In deciding to initiate and prosecute its lawsuit, [plaintiff]
voluntarily incurred these expenses and . . . costs. It cannot now be argued that these
self-inflicted wounds establish prejudice . . . . Nothing before us demonstrates that
these same expenses would not have been incurred during arbitration, or would not
have provided a benefit to [plaintiff] in resolving this dispute in that forum.”)
(emphasis added). Additionally, we note that both the AAA rules and the TAA allow
or require arbitrators to award attorney’s fees if the arbitration agreement provides for
fees or if attorney’s fees could be recovered in court for the arbitrated claim. See
Tex. Civ. Prac. & Rem. Code Ann. § 171.048(c)(1), (2) (Vernon Supp. 2003);
American Arbitration Association, Construction Industry Arbitration
Rules, R-46(c), available at http://www.adr.org (rules last amended eff. July 1,
2001). Here, both subcontracts provided that the prevailing party, in a lawsuit or an
arbitration relating to the subcontracts, “shall be entitled to recover his reasonable
attorney’s fees and costs,” and attorney’s fees would in any event be recoverable in
arbitration for contract-breach claims. See Tex. Civ. Prac. & Rem. Code Ann.
§ 38.001(8) (Vernon 1997); id. § 171.048(c)(2); AAA Rules R-46(c).
          If the trial court’s record had revealed matters adequately supporting EDS’s
claims of prejudice, the court’s having taken judicial notice of its record could have
sufficed. See Marble Slab Creamery, Inc. v. Wesic, Inc., 823 S.W.2d 436, 439 (Tex.
App.—Houston [14th Dist.] 1992, no writ) (noting that trial court’s taking judicial
notice of application to compel, opponent’s response, and record of case sufficed to
provide “ample evidence” supporting waiver conclusion because same subject matter
and parties involved). But the record did not contain information adequately showing
prejudice. And EDS put on no other evidence—by affidavit, testimony, or
otherwise—of prejudice resulting to it from Williams’s complained-of actions. 
          Accordingly, we hold that EDS failed to carry its heavy burden of showing
actual prejudice because it offered no evidence in support. Waiver was EDS’s sole
defense to Williams’s arbitration motion. Therefore, regardless of what standard of
review applies to the determination of prejudice, the trial court erred in denying
Williams’s motion to compel arbitration. Given the state of the record, none of the
cases on which EDS relies requires a contrary holding.



          Accordingly, we sustain Williams’s sole issue.
 

Conclusion
          We reverse the order and remand the cause with instructions for the trial court
to compel arbitration of EDS’s claims on which Williams sought to compel
arbitration.
 
 
Tim Taft
Justice

Panel consists of Justices Taft, Keyes, and Higley.